STATE

v.

Michael A. BALLARD.

No. 93–4–C.A.

Supreme Court of Rhode Island.

July 24, 1997.

Thomas Dickinson, Asst. Attorney General, for Plaintiff.

Janice M. Weisfeld, Asst. Public Defender, Paula Rosin, Asst. Public Defender/Richard Corley, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG and FLANDERS, JJ.

## OPINION

FLANDERS, Justice.

The defendant, Michael A. Ballard (Ballard), appeals from the Superior Court's denial of his motion to reduce his sentences. A jury convicted Ballard in 1979 of conspiracy to kidnap with intent to extort, two counts of kidnapping with intent to extort, kidnapping, carrying a pistol without a license, and three counts of assault with a dangerous weapon. His coconspirators, Alan R. Gomel (Gomel) and Salvatore L. Savastano, Jr. (Savastano), entered guilty pleas before trial and were sentenced to serve twenty-five years.[1] Bal-

1. Gomel received the following concurrent sentences: count 1 (conspiracy to kidnap with intent to extort)—ten years; count 2 (kidnapping Tammy E. Galleshaw with intent to extort)—fifty years (twenty-five years to serve, twenty-five years' probation); count 3 (kidnapping Francis T. Galleshaw III with intent to extort)—fifty years (twenty-five years to serve, twenty-five years' probation); count 4 (kidnapping Kenneth Fullman)—ten years; count 6 (carrying a pistol

lard, on the other hand, received two life sentences for his kidnapping-with-intent-to-extort convictions plus an additional sixty-five years to serve on the remaining counts, all to run consecutively.[2] This court affirmed the convictions. *State v. Ballard,* 439 A.2d 1375 (R.I.1982).

Thereafter, pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure, Ballard filed a timely motion to reduce his sentences. After a series of delays, the motion was finally heard in 1992, after which the trial justice reduced Ballard's sentences by having the sixty-five-year-imprisonment portion run concurrently with the two consecutive life sentences. On February 17, 1994, this court issued a per curiam opinion affirming "by an evenly divided court" the trial justice's decision on the motion to reduce the sentences. *State v. Ballard,* 636 A.2d 728, 728 (R.I.1994). Thereafter, we granted Ballard's motion to reargue his appeal from this ruling.

Under his present sentence Ballard would be eligible to apply for parole after he has served twenty years, G.L.1956 § 13–8–13; *see also DeCiantis v. State,* 666 A.2d 410, 413 (R.I.1995) ("an individual who has been sentenced to serve two or more consecutive life sentences must serve ten years on each sen-

tence before *seeking* parole") (quoting *In re Advisory Opinion to the Governor,* 421 A.2d 535, 536 (R.I.1980)). To be paroled, he would have to receive the "unanimous vote of all the attending members of the [parole] board, providing that not less than four (4) [of the seven] members are present * * *." Section 13–8–13(a).

In *State v. Fortes,* 114 R.I. 161, 173, 330 A.2d 404, 411 (1975), we established the standard this court applies in deciding whether to exercise its inherent power to reduce a manifestly excessive sentence:

> "We believe this power should be exercised only in an exceptional case, * * * where a sentence is manifestly excessive even though within authorized statutory limits, * * * and in the context of a strong policy against interference with the discretion exercised by the trial court in passing sentence. * * * We should use this power only when the record points convincingly to the conclusion that the sentencing justice has without justification imposed a sentence which is grossly disparate from sentences generally imposed for similar offenses."

*See also State v. Vaccaro,* 121 R.I. 788, 794, 403 A.2d 649, 652 (1979) (in considering

---

without a license)—two years; count 7 (assault with a dangerous weapon against Tammy E. Galleshaw)—five years; count 8 (assault with a dangerous weapon against Francis T. Galleshaw III)—five years; count 9 (assault with a dangerous weapon against Kenneth Fullman)—five years.

Savastano received the following concurrent sentences: count 1 (conspiracy to kidnap with intent to extort)—ten years; count 2 (kidnapping Tammy E. Galleshaw with intent to extort)—fifty years (twenty-five years to serve, twenty-five years' probation); count 3 (kidnapping Francis T. Galleshaw III with intent to extort)—fifty years (twenty-five years to serve, twenty-five years' probation); count 4 (kidnapping Kenneth Fullman)—twenty years; count 6 (carrying a pistol without a license)—five years; count 7 (assault with a dangerous weapon against Tammy E. Galleshaw)—ten years; count 8 (assault with a dangerous weapon against Francis T. Galleshaw III)—ten years; count 9 (assault with a dangerous weapon against Kenneth Fullman)—ten years. Gomel's motion to reduce his sentence was denied. Savastano's motion to reduce his sentence was granted with the approval of the victims' family on the basis of his out-of-state

prison record. As a result his sentences for his kidnapping-with-intent-to-extort convictions were reduced from twenty-five years to twenty years with a concomitant increase to thirty years' probation upon release. Gomel's and Savastano's lesser sentences vis-à-vis Ballard are doubtless explained in part by their guilty pleas. *See State v. Tiernan,* 645 A.2d 482, 485 (R.I.1994) ("a trial justice may also take into consideration * * * that a defendant exhibited contrition and consideration for the victims of his or her criminal activity and pled guilty to the crime charged").

2. More particularly, Ballard received the following sentences: count 1 (conspiracy to kidnap with intent to extort)—ten years; count 2 (kidnapping Tammy E. Galleshaw with intent to extort)—life; count 3 (kidnapping Francis T. Galleshaw III with intent to extort)—life; count 4 (kidnapping Kenneth Fullman)—twenty years; count 6 (carrying a pistol without a license)—five years; count 7 (assault with a dangerous weapon against Tammy E. Galleshaw)—ten years; count 8 (assault with a dangerous weapon against Francis T. Galleshaw III)—ten years; count 9 (assault with a dangerous weapon against Kenneth Fullman)—ten years.

whether mandatory life imprisonment is so "excessive" as to constitute cruel and unusual punishment, the court states that "[w]e will not * * * invalidate a particular penalty because we feel that a less severe sanction will satisfactorily accomplish society's penological purposes"). "A manifestly excessive sentence is a sentence disparate from sentences generally imposed for similar offenses when the heavy sentence imposed is without justification." *State v. Ouimette*, 479 A.2d 702, 704 (R.I.1984). "The defendant bears the burden of proving that the sentence violates this standard." *State v. Gordon*, 539 A.2d 528, 530 (R.I.1988).

■ Here, from the information provided to us by the parties [3] and from our own collective experience, we have little trouble in concluding that Ballard's consecutive life sentences were "grossly disparate" in comparison with the sentences imposed on other defendants who have been convicted of kidnappings with intent to extort in other cases in this jurisdiction. But since every sentencing presents different and potentially unique circumstances, *e.g., State v. Marini*, 638 A.2d 507, 518 (R.I.1994) (" '[i]n formulating a fair sentence, the trial justice bears the affirmative duty to treat each defendant separately, focusing on the individual's unique background and character' "), any comparison of sentences can be misleading, especially if too much reliance is placed on this one factor in assessing whether a sentencing justice was justified in imposing sentences that manifestly exceed the sentences generally imposed for such crimes. Nonetheless, for whatever limited value it may have in this case, we note that Ballard's kidnapping-with-intent-to-extort sentences not only were the severest that he could have possibly been given for those convictions, G.L.1956 § 11–26–2 (kidnapping with intent to extort punishable "by imprisonment for a life or for any term not less than five (5) years") but were also grossly in excess of the other such sentences that have been called to our attention by the parties. Indeed they may well collectively be the severest sentences ever given for kidnapping with intent to extort in this jurisdiction. *Cf. State v. McVeigh*, 683 A.2d 375, 376 (R.I. 1996) (affirming denial of motion to reduce a sentence that "was possibly the most severe sentence ever imposed for sexual assault").

What gives us more concern, however, than the comparative severity of Ballard's sentences vis-à-vis other convictions for kidnapping with intent to extort and vis-à-vis those sentences given to Ballard's coconspirators is whether there are sufficient aggravating circumstances present to justify this extreme degree of incremental severity.[4]

**3.** Ballard relies upon a Rhode Island Criminal Information System listing of post–1979 indictments that have resulted in convictions on any kidnapping-with-intent-to-extort counts. He claims, relying on this data, that the average sentence to serve for kidnapping with intent to extort imposed in Rhode Island within the last eighteen years is eight and one-half years, or a term ten to twelve times smaller than his sentence. However, as we stated in *State v. Travis*, 116 R.I. 678, 684–85, 360 A.2d 548, 552 (1976):

"Although this list is somewhat illuminating, it is ultimately of no use to us since we are not informed of the background of each defendant.

"An excessive sentence argument calls into question the propriety of the sentencing justice's exercise of discretion. Sentences are imposed in cases such as this one after a complete presentence report is proffered to the trial justice. * * * For us to make a threshold determination that the challenged sentence is disparate to others, without beginning to consider whether the sentence was justified, we must know what the sentencing justices knew when they imposed the various sentences."

*Cf. State v. Fortes*, 114 R.I. 161, 175, 330 A.2d 404, 412 (1975) (court requests and relies upon "survey indicating the manner in which possession of marijuana cases have been disposed of for purposes of comparison with the disposition in the case at bar"). To give this printout some value, however, we accept Ballard's representation that all the sentences on the printout (other than his own) resulted after pretrial pleas, and we indulge him in his assumption that the facts of those cases were less serious than in his and that the defendants were first-time offenders.

**4.** "In determining a fair sentence, a trial justice considers various factors including the severity of the crime, the defendant's personal, educational, and employment background, the potential for rehabilitation, societal deterrence, and the appropriateness of the punishment." *State v. Brigham*, 666 A.2d 405, 406 (R.I.1995).

"Most of these factors are multidimensional and require a trial justice to reflect upon a variety of subsidiary factors. * * * For example, with respect to the element of rehabilitation, a trial justice may consider a 'defendant's attitude toward society, his sense of remorse, as well as his inclination and capacity to take his place as an honest and useful member of

Indeed, unless the comparatively severe sentences imposed on Ballard are "without justification," then the fact that they are grossly disparate from other sentences generally imposed for these types of crimes is immaterial.

Here there was plenty of factual justification for the trial justice to impose substantially more severe sentences on Ballard than on his coconspirator defendants. *See, e.g., State v. Flores,* 637 A.2d 366, 366–67 (R.I. 1994) ("confederates in crime need not receive equal sentences"); *State v. Holley,* 623 A.2d 973, 974 (R.I.1993) (confederates need not receive equal sentences). According to Savastano's testimony, Ballard was the mastermind of the kidnapping scheme. *See State v. McMaugh,* 672 A.2d 877, 879 (R.I. 1996) ("defendant was the prime mover in the conspiracy, justifying his more severe sentence"). Ballard may also have committed perjury when he took the stand at the trial and attempted to deny, at least in part, his involvement in the kidnappings. And even at the motion to reduce his sentences, the trial justice believed that Ballard was still not exhibiting the kind of remorse that one would expect to find in a defendant who has brought as much trouble as Ballard has to the lives of other human beings. *See, e.g., State v. Sifuentes,* 667 A.2d 791, 792 (R.I. 1995) (no abuse of discretion to deny motion to reduce sentence where the defendant, inter alia, failed to accept responsibility and to express remorse for his crime).

Still, notwithstanding these aggravating circumstances and the consequent justification for sentencing Ballard much more severely than his coconspirators, we are left with the distinct impression that the consecutive life-term sentences he received are unjustifiably out of proportion to the severity of his crimes. Moreover, we also conclude that his sentences go beyond a term of years to be served that would reasonably contribute to the acceptable goals of punishment and rehabilitation. *See State v. McGranahan,* 415 A.2d 1298, 1303 n. 4 (R.I.1980) ("[a] punishment is excessive if it: '(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime' ").

We come to this determination with great reluctance, mindful always of the "strong policy against interference with the discretion exercised by the trial court in passing sentence," *Fortes,* 114 R.I. at 173, 330 A.2d at 411, and of the " 'awesome responsibility' " of the trial court in sentencing, *Tiernan,* 645 A.2d at 484. Nonetheless, it is one thing for a sentencing justice to throw the book at a defendant like Ballard whose crimes indubitably merit severe punishment, but it is quite another to bury him alive under a whole library's worth of hardback years to serve when relevant sentencing considerations do not justify such an extreme sanction. Ballard unquestionably and properly received more time to serve than his coconspirators because of the augmenting factors stated above.[5] But even so, we believe the trial justice abused his discretion when he merely reduced Ballard's sentences by making the two consecutive life terms concurrent with the sixty-five years. *See generally* Arthur W. Campbell, *Law of Sentencing,* § 9:12 at 281–82 (2d ed. 1991) ("the final test for upholding the selection of a concurrent or consecutive sentence is whether the discretion was abused"). Even this modified disposition was way out of proportion to the sentences given to the other coconspirators and to other defendants who have been convicted of this crime. And the record points convincingly to the conclusion that there was no

society.' * * * Likewise, a defendant's giving of false testimony may be probative of his attitude toward society and consequently his prospects for rehabilitation." *Tiernan,* 645 A.2d at 485.

5. As the trial justice made clear, however, the fact that Ballard refused to plead guilty and instead opted for a trial was not considered an aggravating circumstance. *See Tiernan,* 645 A.2d at 485 ("we have specifically prohibited the lengthening of a sentence on the basis of a defendant's refusal to plead guilty or his or her insistence on holding the state to its burden of proving guilt beyond a reasonable doubt at trial").

justification for such an extreme sentence even though Ballard may have masterminded the crime and then may have testified falsely at his trial concerning the extent of his participation in the kidnappings. Moreover, and perhaps most telling of all, this was simply not a case in which the presence of truly heinous, outrageous, or unique circumstances above and beyond the commission of the crimes themselves might have merited the kind of lock-him-up-forever sentences given to Ballard.[6]

■ Although a sentencing justice's decision concerning whether a defendant ought to be sentenced to serve concurrent or consecutive sentences is discretionary, "[c]ontemporary thinking is that consecutive sentences are appropriate only in rare instances." 3 Charles Alan Wright, *Federal Practice and Procedure*, Criminal 2d § 527 at 115 (1982); *see also* 3 American Bar Association, Standards for Criminal Justice, Standard 18–4.5(b), at 290 (2d ed. 1986 Supplement) ("[c]onsecutive sentences should not routinely be imposed"); Model Penal Code § 7.06 (while leaving decision concerning imposition of concurrent or consecutive sentences to court, reasonable limits are set on the extent to which multiple sentences can be cumulated) (Official Draft and Revised Comments 1985). Rather where, as here, a criminal defendant commits multiple criminal endeavors concurrently, thereby giving rise to multiple convictions, that defendant generally ought to be committed to serve sentences for those convictions concurrently, absent the presence of extraordinary aggravating circumstances beyond those manifest in this case. All three teenagers were abducted at gunpoint by the same masked man (Savastano) at the same time from the same place in the same automobile. *Ballard*, 439 A.2d at

1378. Furthermore, after Savastano released one of the kidnapped children, the remaining two abductees were both placed by Savastano into the trunk of Ballard's car and driven to Jamestown. *Id.* Savastano held them there in an abandoned ammunition bunker until they persuaded him to release them later that same day. *Id.* at 1378–79. Although authorized by G.L. 1956 § 12–19–5 (codifying the "well recognized" right to impose consecutive sentences, *State v. Upham*, 415 A.2d 1029, 1033 (R.I.1980)); *see also State v. Simpson*, 573 A.2d 275, 278 (R.I.1990) ("the sentencing process in the Superior Court involves an exercise of judicial discretion and a trial justice may in his or her discretion impose a consecutive sentence"), consecutive sentencing for a single course of criminal activity presents special dangers in complying with the constitutional requirement that "all punishments ought to be proportioned to the offense," R.I. Const. art. 1, sec. 8. Therefore, although the sentencing justice was clearly authorized to impose consecutive sentences, § 12–19–5; *see also In re Advisory Opinion to the Governor*, 421 A.2d 535, 536 (R.I.1980) ("[i]n appropriate circumstances, consecutive life sentences serve the valid legislative purpose of protecting the public"), the justification for such a severe sanction must be apparent from the circumstances and the consecutive sentencing must be proportional to the justification.

As previously noted, the sentencing justice modified Ballard's sentences by making the sixty-five-year portion concurrent with the two-consecutive-life terms, instead of having them all run consecutively, as had been originally decreed. It appears, then, that on the motion to reduce his sentence, Ballard indeed found the sentencing justice " 'in a more

---

**6.** In so stating, we do not intend to minimize the Galleshaw victims' horrific experience of having been abducted at gunpoint, transported away to an unknown fate while being locked into the trunk of a car, and then forcibly held for a day by their kidnappers. However, we note that there was no torture, no sexual abuse, and no other similar attempt to injure the kidnapped children

during the relatively brief period of their unlawful detention. Moreover, this was not a case wherein the trial justice pointed to the defendant's long prior record of violent crimes as a justification for the sentences imposed. *See, e.g., State v. McVeigh*, 683 A.2d 375, 376 (R.I.1996) ("it was the defendant's *acts* that were grossly

sympathetic or receptive frame of mind,'" *State v. Smith*, 676 A.2d 765, 766 (R.I.1996), because that justice implicitly recognized, on reflection, that his original sentences had been too severe.[7] However, we believe that in modifying the sentences to fit the circumstances of this defendant and these crimes, he should have been even more receptive to adjusting the excessive years to serve that were imposed as part of the original sentencing.

Although we are aware that "reduction of sentence normally ought not to be made by a reviewing court but should be left on remand to the sentencing court," *Fortes*, 114 R.I. at 176, 330 A.2d at 413; *see also State v. Wisehart*, 569 A.2d 434, 436 (R.I.1990), the sentencing justice in this case has already had the opportunity to exercise his judgment on that question when he decided to reduce a portion of the sentences. Moreover, pursuant to G.L.1956 § 9–24–11 we conclude that a further reduction of Ballard's sentence here is just, *see also State v. Pittman*, No. 89–558–C.A., unpubl. slip op. (R.I., filed May 25, 1990) (court reduces sentence on appeal) (copy appended).

Accordingly we are of the opinion that the time to be served by Ballard for all the crimes he committed should be served concurrently. For these reasons the appeal is sustained, and the papers in this case are remanded for entry of an amended order and judgment granting Ballard's motion to reduce his sentence, as follows: Ballard shall serve the two life sentences he received for his kidnapping-with-intent-to-extort convictions together with his sixty-five-year-sentence for his remaining convictions concurrently.

BOURCIER and GOLDBERG, JJ., did not participate.

disproportionate to other occurrences of sexual assault, and not his sentence").

*APPENDIX*

Supreme Court

No. 89–558–C.A.

State

v.

Keith Pittman.

ORDER

The defendant appeals from the denial of his motion to reduce sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. The defendant was the driver of a stolen automobile in which a confederate was riding as a passenger. The defendant and his confederate pulled alongside an elderly female victim on May 30, 1984. the confederate jumped from the car, grabbed the victim's handbag, knocked her down and returned to the car. Shortly after defendant and his confederate left the scene in the stolen automobile they were apprehended by Providence police officers.

The confederate pleaded nolo contendere to the crime of robbery and was sentenced to eight years imprisonment, the first six years to be served, the remaining two years suspended. The defendant was tried before a jury, convicted of robbery and sentenced to a term of fifty-years imprisonment, the first forty years to be served and the remaining ten years suspended. At the time of this offense defendant was sixteen years of age, but had been waived from the jurisdiction of the Family Court. The defendant was also convicted of possession of a stolen automobile and was given a consecutive ten-year sentence on that charge. This sentence was suspended, with a ten-year period of probation to begin upon defendant's release from custody for the robbery sentence.

After defendant's conviction had been affirmed, *State v. Pittman*, 516 A.2d 882 (R.I. 1986), he moved to reduce his sentence pursuant to Rule 35. Initially, the trial justice had declined to reduce the sentence pursuant to defendant's Rule 35 motion on the ground

7. The trial justice noted that he gave the "matter serious thought and * * * would like to at least leave a little hope for someone out there."

that he had no jurisdiction to do so pursuant to *State v. O'Rourke*, 463 A.2d 1328 (R.I. 1983). On defendant's appeal, we remanded the case to the trial justice with instructions that he had the power to reduce the sentence, although not to suspend a further portion thereof. On remand, the trial justice declined to shorten or reduce the sentence.

After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that the sentence imposed upon the defendant was entirely disproportionate to the sentence imposed upon his confederate. We have examined the prior record of the defendant and are of the opinion that it did not justify a sentence of this length. Although we are aware of our limited scope of review of a trial justice's ruling on the Rule 35 motion, *see State v. Gordon*, 539 A.2d 528 (R.I. 1988), we, nevertheless, are constrained to reduce the sentence of the defendant from fifty years to eighteen years, of which sentence, ten years may be suspended as the trial justice initially ordered. The defendant will be required to serve eight years of this sentence. The remaining period of ten years which has been suspended will be accompanied by a period of probation of ten years to commence upon the defendant's release.

Entered as an Order of this Court this 25th day of May 1990.

By Order,

[Signature]
Clerk