DECISION
Just after midnight on October 12, 1995, defendant Demetrius Jackson, a loaded revolver in his waistband, along with a sawed-off shotgun and a cache of ammunition secreted in a backpack, cut through Roger Williams Park bent on violence. He was shortly confronted by William Abrahamson, an unarmed Park Ranger, and Brian Quirk, a Providence Police Officer, who had holstered his weapon. As Quirk approached, Jackson pulled out his handgun, and in the ensuing moments he shot and killed Abrahamson and wounded Quirk twice, firing the second volley into Quirk while he already lay wounded on the ground. Jackson then pointed his gun at Providence Police Sergeant Walter Chin's head and attempted to flee, ignoring commands from Chin and another police officer to halt. The officers fired at Jackson, who fell into a nearby lake with a leg wound. The officers waded into the water and pulled him safely to shore.
On April 15, 1997, a jury convicted Jackson of second degree murder of Park Ranger Abrahamson, assault with intent to kill Officer Quirk, assaulting Sergeant Chin with a dangerous weapon, possessing a sawed-off shotgun, and carrying a pistol without a license. On May 22, 1997, he was sentenced consecutively to an aggregate term of 100 years in prison. His conviction was affirmed by the Supreme Court last year. State v. Jackson, 752 A.2d 5 (R.I. 2000).
Jackson now entreats this Court to reduce his sentence pursuant to Rule 35, R.Cr.P. In support of that request, he claims that he is remorseful, that his family has been disadvantaged by his incarceration, and that the sentence was unduly lengthy. He has also appended to his motion a report from a sociologist who views Jackson as susceptible to rehabilitation.
Defendant's professed remorse is, indeed, a hollow claim. At no time has he ever acknowledged his guilt for these egregious offenses. He steadfastly clings to his specious claim that these shootings were accidental. This defendant skulked through a public park in the middle of the night with a loaded gun in his waistband and a sawed-off shotgun and extra ammunition in his backpack. He expended all five shots in his revolver, killing one officer and twice wounding another, shooting him again as he lay wounded on the ground. He then leveled his weapon at yet another officer's head. By no elastic stretch of the most fertile imagination could any rational observer conclude that these shootings were somehow accidental.
The family hardship prong of the defendant's argument is unavailing. Trial courts cannot permit such lamentations to interfere with the imposition of an appropriate prison sentence. E.g., United States v. Wiese, 539 F. Supp. 1208, 1209 (W.D.N Y 1982); United States v. Rodriguez, 444 F. Supp. 163, 164 (S.D.N.Y. 1978).
This Court is not unmindful of the hardships the defendant claims his incarceration may have imposed upon his family. Those hardships, however, scarcely approach the catastrophic privations visited upon the Abrahamson family or the physical and emotional scars suffered by Officers Quirk and Chin. The adverse effects that the defendant's incarceration has caused his family are unfortunate, but in the final analysis it is the convicted defendant, not society or the criminal justice system, who bears the onus for such regrettable dislocations.
The defendant also complains that the consecutive features of his jail sentences are unwarranted, citing State v. Ballard, 699 A.2d 14 (R.I. 1997). The defendant reads Ballard much too restrictively.
There the court expressly noted that consecutive sentences are not inappropriate in "the presence of extraordinary aggravating circumstances." Id. at 18. Indeed, the following year the court further remarked that "consecutive sentences are justified in circumstances where serious harms are suffered by each victim of defendant's `single' criminal act. `No court that elevates the individual rights and human dignity of the accused to a high place — as we should — ought to be so casual as to treat the victims as a single homogenized lump of clay.'" State v. Collins, 714 A.2d 610, 611 (R.I. 1998).
A review of the defendant's pleadings in support of his motion discloses little that was unknown at the time of sentencing. This Court was mindful then, as it is now, that the defendant had apparently not engaged in criminal conduct prior to the October 1995 shooting spree. A lack of prior criminal involvement, however, does not invite clemency for a criminal who murders one law enforcement officer, maliciously wounds another, and then takes aim at a third officer.
That the defendant might exhibit some potential for rehabilitation is not a compelling reason to recalibrate his sentence. Other factors, particularly deterrence and the very nature of these offenses, more than counterbalance such an illusive prediction. Indeed, rehabilitation, as a sound penological theory, has been questioned and, in any event, has been regarded by some as "an unattainable goal for most cases." Mistretta v. United States, 488 U.S. 361, 365, 109 S.Ct. 647, 651 (1989).
The gravity of the offenses of which this defendant was convicted is, in part, reflected by the penalties limined by the General Assembly. The punishment for second degree murder encompasses as much as a life sentence. Attempting to kill or assault another with a dangerous weapon invites as much as a twenty-year sentence. The penalties for unlawfully possessing firearms reach as many as ten years.
One need not, however, simply look in isolation at the maximum reach of the penal code to recognize that the unjustifiable taking of one human life and attempting to take a second one is totally antithetical to the norms of any civilized society.
Deterrence is as much a valid sentencing consideration as is a defendant's prospect for rehabilitation. State v. Cresenzo, 332 A.2d 421,114 R.I. 242, 264 (1975). When one assesses the weight to be accorded to the deterrence factor, a two-fold issue arises: deterring the individual defendant, and deterring others who may be similarly inclined to act as this defendant acted. Specific deterrence as to a particularized defendant may, depending upon the circumstances, find justification in the sentencing matrix. It is said that a criminal offender who is incarcerated for his misdeeds will thus be dissuaded from acting in like fashion upon his release from prison. Given the high number of recidivists who populate our prison systems, however, some modicum of doubt may be cast upon the supposed effects of individual deterrence.
On the other hand, the importance of general deterrence in the sentencing process cannot be lightly discounted. The view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others. A court's duty to impose an acceptably "individualized" sentence does not mean that it should do so in a fashion that is devoid of social value. There must be room to look beyond the particular offender and to the sentence's presumed and intended effect on others, for therein lies the source of the validity of the deterrence justification for penal sanctions.
Despite enhanced penalties for the illegal use of firearms, and notwithstanding the advent of a special Gun Court Calendar resulting in swifter dispositions of firearms cases, there still exist those who are prone to violence. They continue to patrol our communities with guns and malevolence in alarming numbers and in an age bracket that typically encompasses young adults.
There is no magic formula that can be talismanically applied that will neatly excise that criminal element. Legislators increase penal sanctions; police departments strive mightily; and, prosecuting authorities pursue those cases with substantial effort. So too, the courts must, in some fashion, also let it be known that the unlawful possession and violent misuse of guns will not be tolerated.
Where, as here, stiff sentences are prescribed by the Legislature and are called for by the facts of a given case, such jail sentences must be meted out by the courts. Clear and distinct signals must be sent not only to deter such violence, but also to hold accountable those who, like Demetrius Jackson, simply don't get that message, or worse, defiantly ignore it.
The defendant's motion to reduce his sentence is hereby denied.