STATE

v.

**Michael MORRIS.**

No. 2001–587–C.A.

Supreme Court of Rhode Island.

Dec. 16, 2004.

sin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."

Aaron L. Weisman, Providence, for Plaintiff.

Richard J. Ratcliffe, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The defendant, Michael Morris (defendant or Morris), appeals from a Superior Court order denying his post-trial motion to reduce his sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. Because defendant has not shown that the trial justice abused his discretion in denying the motion, we affirm. This case came before the Supreme Court for oral argument on November 1, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time.

## I

### Facts and Travel

Because this case is a sequel to defendant's earlier direct appeal, only a limited discussion of the underlying facts is necessary. See State v. Morris, 744 A.2d 850 (R.I.2000), for a full recitation of the facts.

Morris and his codefendants, Patrick Kilburn and Michael Lopez, perpetrated a horrific armed home invasion at the Cranston home of attorney Martin Harris (Harris) while Harris, his two young stepchildren, Ericka (aged ten) and Derrick (aged twelve), as well as two of their friends, were in the house. During the bedlam that ensued, Morris struggled with Harris, eventually cutting him on the face with a knife before Harris managed to flee. Meanwhile, one of Morris's partners in crime entered the home and threatened the children—who were trying to call 911—with a gun. At one point the attacker held a gun to Erika's head and pointed it at Derrick as well. Morris and his codefendants later fled from the scene and eventually were apprehended by the police. Id. at 853–54.

In connection with his part in the brutal home invasion, Morris was convicted of conspiracy to commit burglary, assault with a dangerous weapon, and unlawful concealment of a knife. The trial justice sentenced Morris to a cumulative fifty-year term of imprisonment. Morris's sentence included ten years for conspiracy, twenty years, to be served consecutively, for assault, and one year, suspended with probation, for the concealed knife. With regard to the assault with a dangerous weapon conviction, the trial justice sentenced Morris to an additional twenty years as a habitual offender, to be served consecutively, without parole.[1]

## II

### Standard of Review

The standard of review on a Rule 35 motion is narrow, because it essentially is a plea for leniency. State v. Ferrara, 818 A.2d 642, 644 (R.I.2003). There is a " 'strong policy against interfering with a trial justice's' " sentencing discretion. Id.

---

1. The habitual offender statute is found at G.L.1956 § 12–19–21. We affirmed its constitutionality in State v. Clark, 754 A.2d 73, 83 (R.I.2000). The defendant makes no arguments about the constitutionality of the habitual offender statute. Nor does he make any constitutional arguments about his overall sentence. As such, we do not apply our recently adopted constitutional analysis under article 1, section 8, of the Rhode Island Constitution (in accordance with the Eighth Amendment to the United States Constitution). See McKinney v. State, 843 A.2d 463 (R.I.2004). Instead, we apply our Super.R.Crim.P. 35 jurisprudence.

"We only will interfere with that discretion 'in rare instances when'" the sentence imposed is one "'without justification and is grossly disparate from other sentences generally imposed for similar offenses.'" *Id.* "'It is the defendant's burden to show that the sentence imposed violates this standard.'"

## III

### Discussion

■ The defendant first argues that the trial justice's decision to run his various sentences consecutively was without justification. To support his argument, defendant cites this Court's decision in *State v. Ballard,* 699 A.2d 14 (R.I.1997), for the proposition that concurrent sentences, rather than consecutive, should be the general rule in sentencing. In *Ballard,* we stated that "where * * * a criminal defendant commits multiple criminal endeavors concurrently, thereby giving rise to multiple convictions, that defendant generally ought to be committed to serve sentences for those convictions concurrently, *absent the presence of extraordinary aggravating circumstances * * *.*" *Id.* at 18 (emphasis added). But for the final clause in the *Ballard* passage, Morris might have a leg to stand on.

The *Ballard* defendant originally was sentenced to two life terms, plus sixty-five years, all consecutive, on the following convictions: (1) two counts of kidnapping with intent to extort; (2) three counts of assault with a dangerous weapon; (3) conspiracy to kidnap with intent to extort; (4) kidnapping; and (5) carrying a pistol without a license. *Id.* at 14–15. On the defendant's Rule 35 motion, the trial justice reduced the sentence to two consecutive life terms running concurrently with the sixty-five year term. *Id.* at 15. On appeal, this Court further reduced Ballard's sentence such that all three of his terms ran concurrently. *Id.* at 19. Our decision in *Ballard* was, in part, based on the lack of "extraordinary aggravating circumstances" justifying consecutive sentences. *Id.* at 18.

In *State v. Guzman,* 794 A.2d 474, 476 (R.I.2002), this Court—based on the "aggravating circumstances" language in *Ballard*—upheld that defendant's consecutive terms. The *Guzman* defendant argued that pursuant to the same *Ballard* passage that Morris relied on, the trial justice had erred by ordering *any* consecutive sentences. *Id.* at 475. Our decision in *Guzman* specifically referenced the trial justice's discussion of "aggravating circumstances" not present in *Ballard. Id.* at 476. There, "the sentence was influenced by the combination of violence and defendant's drug-dealing activities." *Id.* The trial justice "found deterrence to be a significant factor in his sentencing decision, stating that 'the alarming proliferation of [selling drugs] on our streets must somehow be stemmed.'" *Id.*

Likewise, in *Ferrara,* 818 A.2d at 645, the defendant argued that consecutive sentences were improper under *Ballard.* There again, we stressed the final clause of our statement in *Ballard.* "[I]n making the rare decision to grant an appeal from the denial of a motion to reduce sentence, we specifically noted in *Ballard* that there was 'no torture, no sexual abuse, and no other similar attempt to injure the [victims].'" *Id.* (quoting *Ballard,* 699 A.2d at 18 n. 6). In addition, our *Ferrara* decision stressed that in *Ballard* "[w]e also noted the absence of a 'prior record of violent crimes as a justification for the sentences imposed.'" *Id.* (quoting *Ballard,* 699 A.2d at 18 n. 6). The *Ferrara* case involved an extremely violent act—the defendant raped a woman and then threw her out of a car traveling at sixty miles per hour. The defendant also had a prior criminal record. Fully in accord with *Ballard,* we declined to interfere with the trial justice's sentencing discretion. *Id.*

In the case before us, the trial justice, in denying Morris's Rule 35 motion, made specific reference to both the severity of defendant's crimes and his long criminal history. He wrote: "[t]he home invasion in this case was a terrifying experience for Harris and the youngsters in the residence and, in Harris's case, resulted in his being injured by the knife-wielding Morris. * * * To be sure, the sentence imposed upon Morris in this case was severe, but so too were the offenses he committed." In addition, the trial justice wrote:

"Of significant magnitude was Morris's incorrigible and unswerving proclivity for criminal activity. His adult record, which commenced shortly after his eighteenth birthday (he was twenty-six when he committed this offense), bespeaks more than a dozen felony and/or misdemeanor convictions, including breaking and entering of a dwelling, as well as felony assault with a dangerous weapon. Included among the misdemeanors are assault offenses. Morris's juvenile record was equally impressive."

Given these factors, we hold that, contrary to Morris's interpretation, *Ballard* did not establish a bright-line rule on consecutive sentences. *Ballard's* language on consecutive sentences should be narrowly read to apply to the facts in that case; it has no application to the facts of defendant's case. Here, the trial justice was not without justification and did not abuse his discretion in ordering consecutive sentences.

■ Next, Morris argues that his sentences are unjustified in comparison to other sentences imposed on his coconspirators. Although we think this argument is misplaced because it goes to the "grossly disparate" element rather than the "justification" element, we nonetheless address the argument as defendant styled it. The defendant asserts that his fifty-year sentence was unjustified in relation to that of

codefendant Kilburn, who also received a fifty-year sentence for his various convictions. The defendant points out that Kilburn was convicted of seven counts and received the same habitual offender sentence enhancement. Further, defendant points to the fact that Kilburn received just 43 percent of the maximum possible prison term under his seven convictions and the habitual offender enhancement. There is no justification, defendant asserts, for the "stark contrast" where defendant himself received 89 percent of the possible maximum sentence. The defendant's comparison is unavailing. Despite the fact that Kilburn was the chief architect of the home invasion, the trial justice drew an important distinction between Kilburn and Morris, stating that Kilburn "took *no* active part in the * * * home invasion; he was the get-away driver and remained in the vehicle." (Emphasis added.)

■ The defendant makes similar arguments with respect to his other coconspirator, Lopez, who agreed to a ten-year sentence. Although Lopez pled guilty to twelve counts and had a criminal history as well, the trial justice highlighted the fact that the case against him was "substantially weaker" and that Lopez made an "early acknowledgement of guilt and responsibility." Viewed through our narrow standard of review, we cannot say that the trial justice abused his sentencing discretion in this respect. "[E]very sentencing presents different and potentially unique circumstances * * * any comparison of sentences can be misleading, especially if too much reliance is placed on this one factor in assessing whether a sentencing justice was justified * * *." *Ballard*, 699 A.2d at 16.

The defendant makes several additional claims for his "justification" argument. Morris asserts that for several of his convictions, the trial justice sentenced him for the maximum term allowed by statute.

The defendant notes that his sentence for assault with a dangerous weapon exceeds the sentencing benchmarks. He also complains that his overall sentence exceeded the state's recommendations without justification.

■ These arguments need not detain us. The mere fact that defendant received the maximum sentence on several of his convictions cannot carry his burden under Rule 35. *See State v. Ortega*, 755 A.2d 841, 842 (R.I.2000) (mem.) (affirming the denial of a Rule 35 motion to reduce imposition of the maximum sentence on a defendant who had a long history of similar offenses). The defendant's sentence was not beyond the power of the sentencing justice to impose and, as discussed above, was not without justification. *See State v. Furtado*, 774 A.2d 38, 40 (R.I.2001) (holding no abuse of discretion when the defendant's sentence, while disparate from other sentences, was within the power of the court to impose and not unjustified). Moreover, "[a]lthough in arriving at [a sentencing] decision a trial justice may use benchmarks as a guide to the proportionality of the term, he is bound only by the statutory limits." *State v. Gordon*, 539 A.2d 528, 530 (R.I.1988) (citing Sentencing Study Committee, Rhode Island Supreme Court, Report of the Sentencing Study Committee (January 1981)). Finally, "Rule 32 of the Superior Court Rules of Criminal Procedure does not require the trial justice to accept the prosecutor's sentencing recommendations." *Ferrara*, 818 A.2d at 645.

■ Since defendant has failed to carry his burden on the "justification" issue, we need not reach his remaining claims. Nonetheless, we will discuss defendant's "grossly disparate" arguments under Rule 35. Morris argues that his habitual offender sentence is grossly disproportionate to those of other offenders sentenced under that statute and that the trial justice wrongly disregarded his proffered evidence of disparate sentencing. In this respect, it is important to reiterate our above statement that "comparison of sentences can be misleading, especially if too much reliance is placed on this one factor." *Ballard*, 699 A.2d at 16. However, such statistics *can* have "limited value" in carrying defendant's burden. *Id.* The defendant argues that together these standards put him in an impossible position with regard to a Rule 35 showing. It is not clear to us exactly what kind of evidence would make a sufficient showing on the "grossly disparate" prong when statistics are "misleading" and are of "limited value" in any case. Nonetheless, that showing has not been made in this case.

The defendant says that he presented the trial justice with a detailed list of all offenders sentenced under the habitual offender statute for the ten years preceding his case. Morris asserts that he included the crimes each defendant was convicted of, or pled to, as well as the sentences each defendant received under the statute. Morris argues that of the seventeen sentences handed down under the statute in that period, only one (involving two counts of murder) exceeded Morris's twenty years. The rest were in the range of fifteen years or less. Morris argues that these statistics support a finding of "grossly disparate" sentencing. In any case, Morris argues, he presented statistical analysis comparable to that which was sufficient in *Ballard*.

Unfortunately, the defendant's Rule 35 memorandum is absent from the record. Although both parties and the trial justice referred to such a document, a thorough review of the record revealed no memorandum or statistics supporting the defendant's contentions. We are, therefore, unable to address the merits of this claim. *State v. Pineda*, 712 A.2d 858, 860 (R.I. 1998) (stating that the incomplete record

on appeal "preclude[d] any meaningful review"). As such, we need not take up the defendant's statistical evidence quandary and we will not disturb the trial justice's sentencing decision.

### Conclusion

For the reasons stated herein, we affirm the decision of the Superior Court. The record in the case shall be remanded to the Superior Court.