Michael A. BALLARD

v.

STATE of Rhode Island.

No. 2006–186–Appeal.

Supreme Court of Rhode Island.

Nov. 19, 2009.

C. Daniel Schrock, Esq., for Plaintiff.

Christopher R. Bush, Department of Attorney General, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice SUTTELL, for the Court.

The applicant, Michael A. Ballard, appeals from a Superior Court judgment denying his application for postconviction relief. Mr. Ballard's original conviction dates to December 3, 1979, when a jury found him guilty of a number of charges relating to the armed abduction of three teenagers. This case came before the Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the parties' written and oral submissions, we are satisfied that the issues presented may be resolved without the necessity of further briefing and argument. For the reasons set forth in this opinion we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On March 8, 1979, three teenagers were abducted at gunpoint by Salvatore Savastano, Jr.[1] The gunman forced the children into an automobile and drove them to an isolated wooded area to meet Ballard and a third accomplice. Savastano released one of the teenagers on the way; when he reached the isolated area the other two were placed in the trunk of Ballard's automobile. They were then taken to Jamestown, where they were held in an aban-

---

1. A more thorough recitation of the facts may be found in State v. Ballard, 439 A.2d 1375 (R.I.1982) (Ballard I).

doned ammunition bunker for over ten hours under Savastano's watchful eye. The resourceful hostages eventually were released, however, after persuading Savastano that his accomplices had deserted him, at which point the extortion plot quickly unraveled. Soon thereafter, Savastano was arrested at a roadblock that had been set up at the Newport Bridge. Later that evening, Ballard was arrested at a telephone booth while he was speaking to a Rhode Island State Police Lieutenant who was pretending to be the teenagers' father.

Mr. Ballard initially was held by federal authorities. On March 16, 1979, a Rhode Island grand jury returned a nine-count indictment against him, and the state lodged a detainer with federal authorities to be enforced upon completion of the federal charges. The federal government ultimately dismissed all charges against applicant. Thereafter, the state presented federal authorities with a writ of habeas corpus and mittimus, removed Ballard from federal custody at the Federal Building and Courthouse in Providence, and transported him to the Adult Correctional Institutions.

After a jury trial, applicant was convicted of conspiracy to kidnap with intent to extort, two counts of kidnapping with intent to extort, kidnapping, three counts of assault with a dangerous weapon, and carrying a pistol without a license. He was sentenced to two life sentences plus sixty-five years, all of which were ordered to run consecutively.

Thereafter, Ballard filed a motion to reduce his sentence under Rule 35 of the Superior Court Rules of Criminal Procedure. *See State v. Ballard,* 636 A.2d 728 (R.I.1994) (*Ballard II*). The trial justice, who had presided at applicant's criminal

trial, granted the motion in part, and ordered that the sixty-five-year term be served concurrently with the two consecutive life sentences. This Court initially affirmed that decision by an evenly divided court, *id.* at 728, but upon reargument the Court determined that all terms should be served concurrently. *State v. Ballard,* 699 A.2d 14 (R.I.1997) (*Ballard III*). Subsequently, in 2000, a Superior Court magistrate denied a second motion to reduce applicant's sentence. This Court upheld the denial because the motion was time-barred under Rule 35. *State v. Ballard,* 890 A.2d 1238 (R.I.2005) (mem.) (*Ballard IV*).

Also, on February 2, 1988, Ballard filed an application *pro se* for postconviction relief. In response to a request by applicant for additional time to engage an attorney, the original trial justice told him to "take whatever time you need" to select an attorney. Apparently, no further action was taken on this application until October 23, 2000, when Ballard filed a second application for postconviction relief. Counsel was appointed, and the application ultimately was heard and denied on July 21, 2005. Mr. Ballard filed a notice of appeal to this Court on July 26, 2005. The Superior Court entered judgment on June 8, 2006.[2]

## II

### Standard of Review

■■■ Under Rhode Island law, "postconviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." *Young v. State,* 877 A.2d 625, 628 (R.I.2005); *see also* G.L.

---

2. This Court has stated that it will treat a premature appeal as timely filed. *See, e.g.,*

*State v. Diefenderfer,* 970 A.2d 12, 23 n. 24 (R.I.2009).

§ 10–9.1–1(a)(1). "This Court will not disturb a trial justice's factual findings made on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings." *Bustamante v. Wall*, 866 A.2d 516, 522 (R.I.2005) (quoting *Taylor v. Wall*, 821 A.2d 685, 688 (R.I.2003)). On the other hand, "[t]his Court will * * * 'review *de novo* any post-conviction relief decision[s] involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.' " *Id.*

## III

### Analysis

On appeal, applicant raises four issues. First, he argues that Rhode Island did not have jurisdiction to prosecute him because he was not properly removed from federal custody and placed into state custody. Second, applicant asserts that his right to confrontation was violated because the statement of a witness was read into the record, and applicant never had an opportunity to cross-examine that witness. Third, he argues that the trial justice improperly instructed the jury on reasonable doubt. The applicant's final contention is that his reduced sentence remains "manifestly excessive" and unconstitutional.[3]

### A

### Removal From Federal to State Custody

 Mr. Ballard first asserts that the manner in which he was removed from

federal custody and taken into state custody was illegal. As a result, he argues that Rhode Island was without jurisdiction to prosecute him, and thus the charges against him should be dismissed with prejudice. It is well settled that "[c]hallenges to a court's subject-matter jurisdiction can be raised at any point in the proceedings and may not be waived by any party." *State v. Sivo*, 925 A.2d 901, 916 (R.I.2007) (citing *Bradford Associates v. Rhode Island Division of Purchases*, 772 A.2d 485, 488 (R.I.2001)). Nevertheless, we are satisfied that applicant's jurisdictional argument is without merit.

The applicant contends that the writ of habeas corpus and mittimus "served on federal authorities in a federal court building, in which the federal government has exclusive sovereignty [was] not an appropriate legal procedure for transferring physical custody of Ballard from federal to Rhode Island State authorities." In support of his position, he cites three United States Supreme Court cases: *Robb v. Connolly*, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542 (1884); *Tarble's Case*, 80 U.S. (13 Wall.) 397, 20 L.Ed. 597 (1871); *Ableman v. Booth*, 62 U.S. (21 How.) 506, 16 L.Ed. 169 (1858). These cases generally support the proposition that "State judges and State courts, authorized by laws of their States to issue writs of *habeas corpus*, have undoubtedly a right to issue the writ in any case where a party is alleged to be illegally confined within their limits, unless it appear[s] upon his application that he is confined under the authority, or claim and

3. Ballard is no longer incarcerated; he was paroled in September 2008. Nevertheless, this Court has previously determined that a party on parole maintains an interest in his or her appeal because a parole violation could result in a return of the party to the Adult Correctional Institutions to complete the remainder of the sentence. *See Morey v. Wall,*

849 A.2d 621, 624 (R.I.2004) (citing G.L.1956 § 13–8–19(a)). Further, even upon completion of parole, a party's sentence could be relevant for determining the punishment for a probation violation. *See id.* (citing *Colegrove v. Burns*, 175 Ohio St. 437, 195 N.E.2d 811, 812 (1964) (per curiam)).

color of the authority, of the United States, by an officer of that government." *Tarble's Case*, 80 U.S. (13 Wall.) at 409. This is because "[w]henever * * * any conflict arises between the enactments of the two sovereignties, or in the enforcement of their asserted authorities, those of the National government must have supremacy until the validity of the different enactments and authorities can be finally determined by the tribunals of the United States." *Id.* at 407.

We are of the opinion, however, that applicant's reliance on the cases cited is misplaced because there was no conflict between the federal and state governments' asserted authorities in the instant case. The federal government no longer had an interest in exercising authority over applicant when he was released into state custody because, by that time, all federal charges against him had been dismissed. When confronted with a question concerning the transfer of a federal prisoner to state custody with the consent of federal authorities, the United States Supreme Court has held that the state may properly exercise its power to vindicate its own laws. *See Ponzi v. Fessenden*, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922). In *Ponzi*, the defendant, Charles Ponzi, was serving a federal sentence when a state court issued a writ of habeas corpus directing federal authorities to release him into state custody to face state charges. The state issued a writ of habeas corpus and served the writ upon the warden of the federal prison. The federal government, through an assistant attorney general, consented to the issuance of the writ and to the transfer of custody of the prisoner. The defendant argued that the state had no jurisdiction to proceed with his trial while he was in federal custody, but the

Supreme Court disagreed. The Court held:

> "One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it." *Id.* at 260, 42 S.Ct. 309 (citing *In re Andrews*, 236 F. 300 (D.Vt.1916); *United States v. Marrin*, 227 F. 314 (E.D.Pa.1915)).

In the present case, there is no indication that federal authorities challenged the state's process in asserting custody of Ballard. It was proper, therefore, for applicant to have been released into Rhode Island's custody, where he had been indicted, because the federal government no longer had an interest in holding him. Thus, we are satisfied that applicant's argument that he was transferred illegally into state custody is without merit.

## B

### Confrontation Clause

■ Mr. Ballard further contends that his right to confrontation under the Sixth Amendment to the United States Constitution was violated because the statement of an out-of-court declarant was read into the record. Specifically, the state was allowed to present the testimony of one Aldo Merlino by reading his statement into the record.[4] Merlino was neither called as a wit-

---

4. We will assume without deciding that Mr. Merlino's statement was offered for the truth of the matter asserted.

ness, nor was he ever subjected to cross-examination concerning his statement.

The applicant cites *Crawford v. Washington,* 541 U.S. 36, 54–55, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which was decided more than twenty years after his conviction, for the proposition that testimonial hearsay statements may be admitted as evidence against an accused at a criminal trial only when (1) declarant is unavailable to testify, and (2) the defendant had a prior opportunity to cross-examine the declarant. It is Ballard's position that the trial court improperly admitted Merlino's statement because the state did not establish Merlino's unavailability, and applicant did not have a previous opportunity to cross-examine him. Therefore, applicant contends, his convictions should be reversed.

■ In *Whorton v. Bockting,* 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007), the United States Supreme Court held that the rule announced in *Crawford* should not be applied retroactively to cases that had already been decided on direct review.[5] Mr. Ballard's argument is based solely on the federal constitution, and we are bound by the United States Supreme Court's construction of the federal constitution. As a result, the rule announced in *Crawford* cannot serve as a basis for reversal of applicant's conviction.

## C

### Jury Instruction on Reasonable Doubt

■ The applicant argues that the trial justice improperly instructed the jury on reasonable doubt, effectively lowering the state's burden of proof. The trial justice defined "reasonable doubt" as an "actual or a substantial doubt." *State v. Ballard,* 439 A.2d 1375, 1387 (R.I.1982) (Ballard I). While applicant's case was still on direct review, this Court overruled its own precedent and held that trial justices should not equate "substantial doubt" with "reasonable doubt." *State v. Thorpe,* 429 A.2d 785, 790 n. 4 (R.I.1981).

■ In his first appeal to this Court in 1981, applicant raised, and this Court addressed, this same argument. *Ballard I,* 439 A.2d at 1387. At that time, this Court determined it could not "fault the trial justice for instructing the jury on the law as it existed at that time," and it rejected applicant's claim of error. *Id.* In this appeal, applicant cites a later case, decided by this Court in 1992, for the proposition that if a defendant's case is pending on direct review and a new rule of criminal procedure is announced, a defendant should benefit retroactively from the new rule. *See Pailin v. Vose,* 603 A.2d 738 (R.I.1992). The applicant overlooks the fact that the rule he seeks to have applied retroactively, by its own terms, had only prospective effect. *See Thorpe,* 429 A.2d at 790 n. 4 ("*Hereafter,* trial justices, in discussing the reasonable-doubt doctrine, shall omit any reference to 'substantial doubt.'" (Emphasis added.)). Therefore, applicant may not benefit from the retroactive application of this rule. Because this issue previously has been addressed by this Court on direct review, any further consideration is barred by the doctrine of *res judicata.*[6]

---

**5.** The Supreme Court held that *Crawford* did not announce a "watershed" rule of criminal procedure, such as could be applied retroactively on collateral review. *See Whorton v. Bockting,* 549 U.S. 406, 421, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

**6.** The doctrine of *res judicata* provides that parties may not relitigate issues that "either were litigated or might have been litigated in a prior action." *Mulholland Construction Co.*

## D

### Manifestly Excessive Sentence

■ Mr. Ballard's final argument is that, although his sentence has been reduced on two separate occasions, it remains "manifestly excessive" and thus violates the Eighth Amendment to the United States Constitution. The applicant's sentence was reduced initially by the original trial justice. *Ballard III*, 699 A.2d at 15. Thereafter, this Court reduced Ballard's sentence further because we held that sentencing him to two consecutive life sentences was manifestly excessive. *Id.* at 17. We reduced his sentence to require that all terms be served concurrently. *Id.* at 19.

■ The applicant now appeals from his adjusted sentence. But in doing so, Ballard again raises an issue that we previously have reviewed and decided. *See Ballard IV*, 890 A.2d at 1239. *Res judicata*, or claim preclusion, "serves as an 'absolute bar to a second cause of action where there exists [an] identity of parties, identity of issues, and finality of judgment in an earlier action.'" *ElGabri v. Lekas*, 681 A.2d 271, 275 (R.I.1996) (quoting *Gaudreau v. Blasbalg*, 618 A.2d 1272, 1275 (R.I.1993)). Thus, further review of the applicant's sentencing is also barred by the doctrine of *res judicata*.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment and remand the papers in the case to the Superior Court.

v. Lee Pare & Associates, Inc., *576 A.2d 1236,* 1238 (R.I.1990).