**STATE**

v.

**Jeffrey BETTENCOURT.**

No. 99–476–C.A.

Supreme Court of Rhode Island.

Feb. 15, 2001.

---

Lauren Sandler Zurier, Aaron L. Weisman, Stephen G. Dambruch, Providence, for Plaintiff.

John A. MacFadyen, III, Providence, Lise J. Gescheidt, Stephen E. Asprinio, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on January 22, 2001, pursuant to an order that directed both parties to appear in order to show cause why the issues

raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

The facts of this case are more elaborately presented in *State v. Bettencourt*, 723 A.2d 1101 (R.I.1999). The basic facts of this case insofar as relevant to this matter are as follows. The defendant, Jeffrey Bettencourt (Bettencourt or defendant), was charged with two counts of driving so as to endanger, death resulting, in violation of G.L.1956 § 31–27–1. On June 30, 1995, David Tippet (David) and Richard Nolfi (Richard) were changing a flat tire on their friend's Jeep in the left median shoulder on a roadway near Jefferson Boulevard in Warwick. Traffic was heavy this day, so as the young men worked on changing the tire, two of the young women traveling with them directed the heavy oncoming traffic away from the area by waving their arms. The two girls positioned themselves behind a Ford Taurus that was traveling with them and that had pulled in and parked behind the Jeep. The scene turned disastrous when defendant, who was driving a yellow pickup truck, appeared. According to testimony, defendant entered the far left lane of travel and proceeded for a half mile passing general traffic at a speed somewhere between sixty and eighty miles per hour. The truck then veered into the left median, first striking the Taurus, and then striking David and Richard (victims). The force of the impact sent the victims fifty feet beyond the Jeep. One of the victims, David, died instantly at the scene and the other, Richard, died of complications at the hospital.

The defendant was charged with and convicted of two counts of driving to endanger, death resulting. The defendant was sentenced to ten years on each count, the legal maximum. The judge ordered ten years to serve on count 1 and a consecutive ten years on count 2, with the latter sentence suspended, with ten years probation. The defendant appealed to this Court in *State v. Bettencourt*, 723 A.2d 1101 (R.I.1999). Among other issues on appeal, defendant sought reduction of his sentence. *See id.* at 1114. However, after finding no justification to consider this issue on direct appeal of the conviction, the Court refused to hear that matter and instructed defendant to file the proper Super. R.Crim. P. 35 motion for reduction of sentence in the Superior Court within 120 days of the Court's decision. *See* 723 A.2d at 1114. After hearing defendant's Rule 35 motion, the trial justice declined to decrease defendant's sentence. The defendant appealed.

■ On appeal, the defendant argues that his sentence was "manifestly excessive" in that it was disparate from sentences generally imposed for similar offenses. The defendant also argues that the judge erroneously considered the fact that defendant was the holder of a Commercial Driver's License (CDL) in determining the length of defendant's sentence. The defendant contends that his sentence should not have been enhanced simply because he holds a CDL.

■ This Court will interfere with a trial justice's discretion in deciding a motion to reduce sentence only in rare circumstances "when the trial justice has imposed a sentence that is without justification and is grossly disparate from other sentences generally imposed for similar offenses." *State v. Mollicone*, 746 A.2d 135, 137 (R.I.2000). A motion to reduce sentence " 'allows [a] trial justice to evaluate whether the sentence originally imposed is unduly severe under the circumstances and to consider any new information or circumstances that may arise * * *.' " *State v. Ferrara*, 748 A.2d 246, 248 (R.I.2000) (quoting *State v. O'Rourke*, 463 A.2d 1328, 1331 (R.I. 1983)).

It is well settled that the trial justice is given great discretion in deciding the appropriateness of a defendant's sentence. *See Mollicone,* 746 A.2d at 137. The power of the "[Court] to review sentences should be utilized only in the exceptional case in the context of a strong policy against interference with the discretion exercised by the trial court in passing sentence. * * * [T]he power should be exercised only when the sentence is without justification and grossly disparate from sentences generally imposed for similar offenses." *State v. Giorgi,* 121 R.I. 280, 282, 397 A.2d 898, 899 (1979) (citing *State v. Fortes,* 114 R.I. 161, 173, 330 A.2d 404, 411 (1975)).

The crime of driving to endanger, death resulting, is punishable under § 31–27–1 by imprisonment for not more than ten years. Here, the trial justice sentenced defendant within the statutory guidelines of § 31–27–1. The defendant stresses that the benchmarks that existed at the time of sentencing recommended that a person in defendant's situation with no prior record should receive a sentence of one to two years.[1] The defendant asserts that departure from the benchmarks is permitted "only for substantial and compelling circumstances." However, as this Court has stated "[a]lthough in arriving at his decision a trial justice may use benchmarks as a guide to the proportionality of a term, he is bound only by the statutory limits." *State v. Gordon,* 539 A.2d 528, 530 (R.I.1988). In formulating a fair sentence, a trial justice "considers various factors including the severity of the crime, the defendant's personal, educational, and employment background, the potential for rehabilitation, societal deterrence, and the appropriateness of the punishment." *State v. Brigham,* 666 A.2d 405, 406 (R.I. 1995). "[T]hese factors are multidimensional and require a trial justice to reflect upon a variety of subsidiary factors." *State v. Tiernan,* 645 A.2d 482, 485 (R.I.

1994). As noted, a trial justice is given great deference in formulating the sentence a defendant is to serve. The propriety of that sentence should not be questioned unless it is patently unfair.

The record reveals that the justice considered numerous factors in making her decision. In fact, the justice stated that "[t]his sentencing was not a split second decision. It was the product of lengthy and conscientious reflection and agonizing." In fashioning her decision, the justice stated that "this was a crime. The defendant's intentional conduct killed two young, innocent boys." She also noted that in "[her] assessment of credibility and upon review of inconsistent statements[,] * * * the defendant * * * did not tell the whole truth." Although the justice did consider that defendant possessed a CDL in making her decision, it is apparent that this factor alone was not the linchpin upon which her decision was based. Moreover, consideration of the fact that the defendant possessed a CDL seems to fit under the rubric of education and employment, which are factors that a justice may consider when imposing a sentence. *See Brigham,* 666 A.2d at 406.

Here, defendant contends that he was treated differently because he possessed a CDL. However, it is not uncommon for defendants with "special skills" to receive harsher sentences. For example, under the Federal Sentencing Guidelines, the Federal Courts are allowed to increase the base offense level for use of special skills in furtherance of a crime. *See United States v. Calderon,* 127 F.3d 1314, 1339 (11th Cir.1997). " ' "Special skills" refers to a skill not possessed by members of the general public and usually requiring substantial education, training *or licensing.* Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.' " *Id.* (quoting *United States v. Malgoza,* 2 F.3d 1107, 1110 (11th Cir.

---

1. The current benchmarks under G.L.1956 § 31–27–1 state that a person convicted under this section with no prior record should receive three to five years.

1993)). This Court is cognizant of the fact that defendant in the instant matter did not utilize his special skills in furtherance of a crime. However, we recognize that courts are permitted to consider the training, skills, and licensing of defendants in determining the sentences they are to serve. *See United States v. Mendoza,* 78 F.3d 460, 465 (9th Cir.1996) (skills necessary to operate eighteen-wheeler tractor-trailer constituted a "special skill" for purpose of enhancement of defendant's sentence under sentencing guidelines).

As noted, this Court's authority to review the trial justice's decision in these matters is extremely limited. A motion to reduce a sentence "is essentially a plea for leniency." *State v. Byrnes,* 456 A.2d 742, 744 (R.I.1983). This Court has stated that such motions are within the discretion of the trial justice and "may be granted if the court decides on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any reason, unduly severe." *Id.* at 744–45. The defendant has not shown that the original sentence was unduly severe or that circumstances have changed so as to require a reduction in sentence.

For the reasons stated, the defendant's appeal is denied and dismissed, and the sentence imposed is affirmed. The papers of the case are remanded to the Superior Court.

BOURCIER, J. did not attend oral argument, but participated on the basis of briefs.