**STATE**

v.

**Jerry COLEMAN.**

**No. 2007–223–C.A.**

Supreme Court of Rhode Island.

Dec. 14, 2009.

---

Christopher R. Bush, Department of Attorney General, for Plaintiff.

Marie T. Roebuck, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice WILLIAMS (ret.), for the Court.

The defendant, Jerry Coleman, appeals from a Superior Court order denying his motion to reduce sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. This case came before the Supreme Court for oral argument on September 30, 2009, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we conclude that this appeal may be resolved without further briefing or argument. For the reasons set forth below, we affirm the order of the Superior Court.

## I

### Facts and Travel

The facts of this case are more elaborately presented in *State v. Coleman*, 909 A.2d 929 (R.I.2006). We discuss only those facts relevant to Mr. Coleman's present appeal. At approximately 9:30 p.m. on July 3, 2001, Mr. Coleman and his confederate, Jeffrey Alston a/k/a Kam Ausar,[1] broke into the Warwick home of Dennis and Suzanne Laven. While the two were still inside, Mr. and Mrs. Laven returned home and noticed a suspicious car outside their house. Noticing that their front door was ajar and a light was on inside the house, Mr. Laven approached the house, yelling some approximation of "[g]et out of the house, we're home." Just then, he observed two men run out of his house and into the nearby woods. Mr. Laven briefly gave chase, but then returned to the suspicious vehicle parked out front and removed the keys from the ignition. Meanwhile, Mrs. Laven phoned 911 from a portable telephone that she had retrieved from inside the house. She then joined her husband to wait in the driveway for the two men to return from the woods, which they did a short time later.

As Mr. Coleman and Mr. Alston emerged from the woods, Mr. Laven yelled to them that he had their keys and that the police were on their way. After confirming that the keys were not in the ignition, the larger of the two men charged Mr. Laven, stating that he had a knife and was going to stab him.[2] As the larger man charged, Mr. Laven threw the keys into the woods and steeled himself for the altercation. As the fight between Mr. Laven and the larger man ensued, the smaller of the two men joined the fight and struck Mr. Laven in the head from behind and kicked him repeatedly. Mr. Laven and the two men continued to fight

---

1. Jeffrey Alston is also known as Kam Ausar. On November 2, 2005, this Court issued an order granting Mr. Alston's motion to amend the record to reflect this name change. For the sake of simplicity, however, we will refer to Kam Ausar as Jeffrey Alston. *See State v. Coleman*, 909 A.2d 929, 931 n. 1 (R.I.2006).

2. The Lavens were unable to identify Mr. Alston and Mr. Coleman, however, the jury in Mr. Alston's trial convicted him of felony assault, while the jury in Mr. Coleman's trial found him guilty of the lesser-included offense of simple assault. *See State v. Alston*, 900 A.2d 1212, 1217 (R.I.2006); *see also Coleman*, 909 A.2d at 932.

until the smaller man returned to the car to try to start it. A short time later, the larger man abruptly ceased fighting and joined the smaller man at the car. Just as suddenly, the larger man returned to Mr. Laven, this time declaring that he had a gun and was going to shoot him. Another fight between the two men ensued until the larger man turned his attention to Mrs. Laven and told her he was going to shoot her. In response, Mrs. Laven surrendered her own car keys and the larger man returned to his car believing the keys to be his. The smaller man then unsuccessfully attempted to start his car. Suddenly, the headlights from a neighbor's car illuminated the street and both men fled back into the woods. The police arrived on the scene shortly thereafter.

After an investigation into the incident, the state charged Mr. Coleman and Mr. Alston each with: (1) conspiracy to break and enter a dwelling in violation of G.L. 1956 § 11–1–6; (2) breaking and entering a dwelling in violation of G.L. 1956 § 11–8–2; (3) assault with a dangerous weapon in violation of G.L. 1956 § 11–5–2; (4) assault and battery resulting in serious bodily injury in violation of § 11–5–2; and (5) driving a motor vehicle without the consent of the owner in violation of G.L. 1956 § 31–9–1 and G.L. 1956 § 31–27–9. Mr. Alston and Mr. Coleman were tried separately.[3]

## A

### The Alston Trial

Mr. Alston was tried and convicted of felony conspiracy, breaking and entering a dwelling, and felony assault. He was then sentenced to a total of seventeen years imprisonment, including consecutive terms of: (1) ten years on the conspiracy charge

(five years to be served at the Adult Correctional Institutions (ACI) and five years suspended, with probation); (2) fifteen years on the breaking and entering charge (five years to be served at the ACI and ten years suspended, with probation); and (3) ten years on the assault charge (seven years to be served and three years suspended, with probation). In addition to his seventeen-year sentence, Mr. Alston had a previously suspended sentence revoked, resulting in an additional seven-year sentence. Subsequently, Mr. Alston appealed his conviction, which was vacated by this Court on the grounds that the trial justice erred by admitting Mr. Coleman's confession into evidence at trial. *State v. Alston,* 900 A.2d 1212, 1221 (R.I.2006).

Mr. Alston was retried in April 2008, and, for a second time, was convicted of felony conspiracy, breaking and entering, and felony assault. This time, Mr. Alston was sentenced to a total of forty years imprisonment, consisting of: (1) ten years for conspiracy to commit breaking and entering; (2) ten years for breaking and entering; and (3) twenty years for felony assault. He was sentenced to serve all terms consecutively.

## B

### The Coleman Trial

In July 2003, a jury convicted Mr. Coleman of conspiracy to commit breaking and entering, breaking and entering, simple assault, and driving a motor vehicle without the consent of the owner. Mr. Coleman was sentenced to serve a total of twenty years imprisonment, including: (1) ten years on the conspiracy charge (five years to be served at the ACI and five years suspended, with probation); (2) fifteen

---

**3.** Prior to trial, Mr. Alston successfully moved to sever his case. *Coleman,* 909 A.2d at 934 n.

**4.**

years on the breaking and entering charge (twelve-and-a-half to be served and two-and-a-half suspended, with probation); (3) one year on the simple assault charge; and (4) five years on the charge of driving a motor vehicle without consent of the owner (eighteen months to serve, and three-and-a-half years suspended, with probation). Like Mr. Alston, Mr. Coleman also was sentenced to serve consecutive sentences.

Mr. Coleman appealed his convictions on several grounds, none of which were successful. *See Coleman*, 909 A.2d at 934. On December 4, 2006, Mr. Coleman moved to reduce his sentence pursuant to Rule 35, arguing that: (1) his sentence was disproportionate to that of his confederate, Mr. Alston; (2) his sentence for breaking and entering exceeded the recommended sentence as set forth in the Superior Court Sentencing Benchmarks; and (3) that his sentences should run concurrently rather than consecutively.

## II

## Standard of Review

■■■ "[A] motion to reduce sentence under Rule 35 'is essentially a plea for leniency.' " *State v. Ferrara*, 818 A.2d 642, 644 (R.I.2003) (quoting *State v. Kilburn*, 809 A.2d 476, 480 (R.I.2002)). "This Court has maintained a 'strong policy against interfering with a trial justice's discretion in sentencing matters,' and, therefore, we only will interfere with that discretion 'in rare instances when the trial justice has imposed a sentence that is without justification and is grossly disparate from other sentences generally imposed for similar offenses.' " *State v. Rossi*, 771 A.2d 906, 908 (R.I.2001) (mem.) (quoting *State v. Mollicone*, 746 A.2d 135, 137 (R.I.2000)). "A manifestly excessive sentence is defined as one which is 'disparate from sentence[s] generally imposed for similar offenses when the heavy sentence imposed is without justification.' " *State v. Ortega*, 755 A.2d 841, 841 (R.I. 2000) (mem.) (quoting *State v. Ballard*, 699 A.2d 14, 16 (R.I.1997)). "It is the defendant's burden to show that the sentence imposed violates this standard." *Id.* (quoting *State v. Cote*, 736 A.2d 93, 94 (R.I. 1999)).

## III

## Analysis

### A

### The Breaking and Entering Sentence

■■■ Mr. Coleman first argues that his twelve-and-a-half-year sentence for breaking and entering was grossly disproportionate to the five-year breaking and entering sentence that Mr. Alston received after his first trial. Initially, both Mr. Coleman and Mr. Alston received fifteen-year sentences for their breaking and entering convictions. Mr. Coleman, however, was ordered to serve twelve-and-a-half years, with two-and-a-half years suspended, while Mr. Alston was ordered to serve five years, with ten years suspended. Mr. Coleman's argument relies on the initial seven-and-a-half-year disparity between Mr. Coleman's time to serve and Mr. Alston's time to serve after his first trial. That comparison, however, is no longer meaningful because Mr. Alston's first conviction was vacated, and his first sentence has become a nullity. After Mr. Alston's first conviction was vacated, and after he was convicted a second time, he received a total of forty years imprisonment. Of that forty-year sentence, Mr. Alston was sentenced to serve ten years imprisonment on the breaking and entering charge. Thus, the difference between Mr. Coleman and Mr. Alston's breaking and entering sentences is a mere two-and-a-half years.

This Court has held that confederates need not receive equal sentences for the same crime. *See State v. Flores,* 637 A.2d 366, 366–67 (R.I.1994) (disparity between confederates' sentences permissible where sentence mirrored culpability); *State v. Holley,* 623 A.2d 973, 974 (R.I.1993) (five year difference between sentences of two confederates not grossly disproportionate). Here, the two-and-a-half-year disparity between the sentences that Mr. Coleman and Mr. Alston received for breaking and entering is not grossly disproportionate. Further, although Mr. Coleman received two-and-a-half years more on the breaking and entering charge than Mr. Alston, Mr. Alston received a total of forty years imprisonment, compared with Mr. Coleman's twenty years imprisonment. Mr. Coleman's argument that his sentence was grossly disproportionate to Mr. Alston's is therefore meritless.

Next, Mr. Coleman argues that his fifteen-year breaking and entering sentence was excessive because it exceeds the sentence as set forth in the Superior Court Sentencing Benchmarks. The crime of unlawful breaking and entering of a dwelling house is punishable under § 11–8–2(a) by imprisonment for "not less than two (2) years and not more than ten (10) years for the first conviction, and for the second and subsequent conviction shall be imprisoned for not less than four (4) years and not more than fifteen (15) years * * *." In addition to the sentence imposed by statute, the Superior Court Sentencing Benchmarks recommend a one-to-four-year sentence for breaking and entering into an unoccupied dwelling. Superior Court Sentencing Benchmark 3.

■■ Although, when sentencing a defendant, "a trial justice may use benchmarks as a guide to the proportionality of a term, [s]he is bound only by the statutory limits." *State v. Bettencourt,* 766

A.2d 391, 394 (R.I.2001) (quoting *State v. Gordon,* 539 A.2d 528, 530 (R.I.1988)). "In formulating a fair sentence, a trial justice 'considers various factors including the severity of the crime, the defendant's personal, educational, and employment background, the potential for rehabilitation, social deterrence, and the appropriateness of the punishment.'" *Id.* (quoting *State v. Brigham,* 666 A.2d 405, 406 (R.I. 1995)). The sentencing benchmarks allow departure "when substantial and compelling circumstances exist." Superior Court Sentencing Benchmarks, Using the Benchmarks 1. If a trial justice sentences a defendant outside the recommended range, the benchmarks instruct the trial justice to "give specific reasons for the departure on the record." *Id.* Examples of compelling circumstances provided in the sentencing benchmarks include a defendant's prior criminal record, lack of remorse, whether the defendant testified, and if he or she testified and gave patently false testimony, and "other substantial grounds which tend to mitigate or aggravate the offender's culpability." *Id.* at 1.(q). Further, the sentencing benchmarks explicitly allow for a sentencing departure based on a defendant's criminal history. Superior Court Sentencing Benchmarks, Departure from Benchmarks.

■ Here, because this was Mr. Coleman's second breaking and entering conviction, the maximum sentence he could receive under § 11–8–2 was fifteen years, a term which the trial justice imposed. Acknowledging her departure from the benchmarks in sentencing Mr. Coleman to fifteen years with twelve and a half to serve, the trial justice listed myriad reasons for doing so: (1) that the breaking and entering by Mr. Coleman was not comparable to the breaking and entering into an unoccupied dwelling because there

was no indication that the house was going to remain vacant, as was demonstrated by the Lavens' return home in the midst of the break-in; (2) that the breaking and entering turned into a crime of violence; (3) that Mr. Coleman was a career criminal and was a poor candidate for rehabilitation; (4) that he refused to take personal responsibility for his crimes; (5) that he lacked any remorse; and (6) that he lied on the stand at his trial. She further stated that she found it in the best interests of the community for Mr. Coleman to be removed from society for twenty years. These specific findings, in addition to the fact that this was Mr. Coleman's second breaking and entering conviction more than fully justify the trial justice's departure from the benchmarks. Thus, we see no reason to disturb the sentence imposed.

## B

### Consecutive Sentences

■ Finally, Mr. Coleman argues that his sentences should have run concurrently, not consecutively. Relying on this Court's holding in *Ballard*, 699 A.2d at 18, that "where * * * a criminal defendant commits multiple criminal endeavors concurrently, thereby giving rise to multiple convictions, that defendant ought to be committed to serve sentences for those convictions concurrently, absent the presence of extraordinary aggravating circumstances * * *." In recent years, however, we have declined to treat our holding in *Ballard* as a bright-line rule with respect to consecutive sentences. *See State v. Monteiro*, 924 A.2d 784, 794 (R.I.2007) (questioning whether *Ballard* still held precedential value); *State v. Vieira*, 883 A.2d 1146, 1150 n. 3 (R.I.2005) (reiterating that our holding in *Ballard* should be read narrowly as applying to the facts in that case); *State v. Morris*, 863 A.2d 1284, 1288

(R.I.2004) (*"Ballard* did not establish a bright-line rule on consecutive sentences."); *see also Ferrara*, 818 A.2d at 645 (distinguishing *Ballard* on its facts in upholding the defendant's consecutive sentences). While we are aware that "*stare decisis* serves a profoundly important purpose in our legal system," we also firmly believe that "overruling precedent is justified if the motivating purpose is to eliminate inconsistency and anomalous results." *State v. Gautier*, 871 A.2d 347, 358 (R.I. 2005) (quoting *State v. Werner*, 615 A.2d 1010, 1014 (R.I.1992)). Recognizing that this Court's holding in *Ballard* was an aberration, we now hold that *Ballard* is of little or no precedential value.

■ At both Mr. Coleman's sentencing and his motion to reduce hearing, the trial justice, in ordering Mr. Coleman to serve consecutive sentences, emphasized that Mr. Coleman's crime was not just a run-of-the-mill breaking and entering. What the trial justice found most disturbing was that, rather than fleeing once the Lavens returned home, Mr. Coleman chose to stay and fight Mr. Laven for the keys to his getaway car. The trial justice also determined that the crime was "one of violence, * * * a premeditated crime, a cold-hearted crime, a crime for profit, with no regard, whatsoever, to the rights of Mr. and Mrs. Laven, and without regard to the law." The trial justice further highlighted that this incident had changed the lives of both Mr. and Mrs. Laven by "interfere[ing] with their sense of comfort and security at home."

After noting that Mr. Coleman lied on the stand during his trial, that he lacked any remorse for his actions, and that he refused to take personal responsibility, the trial justice found that Mr. Coleman was a poor candidate for rehabilitation. Finally,

the trial justice deemed Mr. Coleman to be a danger to society, given his long history of unlawful behavior and his inability to "function in society as a law-abiding and productive member of the community." Given these factors, and the trial justice's exhaustive explanation of her reasoning in sentencing Mr. Coleman, we hold it was not an abuse of her discretion to order Mr. Coleman to serve consecutive sentences.

## IV

### Conclusion

For the reasons stated herein, we affirm the Superior Court's denial of Mr. Coleman's motion to reduce his sentence.