**STATE**

v.

**Curley SNELL.**

**No. 2009–262–C.A.**

Supreme Court of Rhode Island.

Jan. 21, 2011.

---

Aaron L. Weisman, Department of Attorney General, for State.

James T. McCormick, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Curley Snell (Snell or defendant) appeals from an order denying his motion to reduce his sentence based on Rule 35(a) of the Superior Court Rules of Criminal Procedure. Specifically, the defendant challenges the trial justice's reasoning for departing upwards from the Superior Court sentencing benchmarks and also for imposing consecutive, rather than concurrent sentences. The defendant maintains that his victims' injuries were not life-threatening and that, therefore, this rationale could not form the basis for the trial justice's allegedly severe sentences. This case came before the Supreme Court for oral argument on December 8, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in

this appeal should not summarily be decided. Subsequent to our consideration of the parties' submitted memoranda and oral arguments, we are satisfied that cause has not been shown, and we proceed to decide the appeal at this time. For the reasons set forth below, we affirm the Superior Court order.

## I

### Facts and Procedural History

In the early morning of January 12, 2001,[1] Snell laid in wait and then attacked the mother of his child, Tanny Eisom (Eisom), first grabbing her and punching her with his fist and then stabbing her in the neck with a three-inch pocketknife. When Eisom's brother, Slade Edmonds (Edmonds), came to her aid, Snell used the same knife to slice his abdomen and stab his neck. Once Edmonds fell to the ground, Snell stomped on Edmonds's head and face several times with his boot-clad foot.

On March 19, 2001, Snell was charged with assaulting Eisom with a dangerous weapon, a knife, in violation of G.L.1956 § 11–5–2 and G.L.1956 § 12–29–5 (count 1); assaulting Edmonds with a dangerous weapon, a knife, in violation of § 11–5–2 (count 2); assaulting Edmonds with a dan-gerous weapon, a shod foot, in violation of § 11–5–2 (count 3); and assaulting Eisom in violation of § 11–5–3 and § 12–29–5 (count 4). On December 11, 2001, a jury convicted Snell on all charges, and on March 22, 2002, the trial justice sentenced Snell to a total of forty-five years, with thirty years to serve and the remaining fifteen years suspended, with probation. Specifically, the trial justice sentenced Snell to serve fifteen years on count 1 and a consecutive fifteen years to serve on count 3. On count 2, the trial justice imposed a fifteen-year suspended sentence, with fifteen years probation to commence upon his release from the Adult Correctional Institutions (ACI). Lastly, on count 4, Snell was sentenced to ten years, with five years to serve concurrent to count 1 and five years suspended, with probation to commence upon his release from the ACI. The judgment of conviction was signed by the trial justice on April 7, 2002.[2]

Snell first attempted a direct appeal of his convictions, but this Court found his claims of error unavailing and affirmed the Superior Court judgment on February 27, 2006. *State v. Snell*, 892 A.2d 108, 123 (R.I.2006). Thereafter, on May 26, 2006,[3] Snell timely moved for a reduced sentence based on Rule 35(a).[4] His memorandum

1. This Court detailed the facts of this case in *State v. Snell*, 892 A.2d 108, 112–14 (R.I. 2006), in which we denied defendant's direct appeal.

2. We note that the sentencing language for counts 2 and 4 is somewhat unclear, however we also recognize that the parties and this Court in *Snell*, 892 A.2d at 112, operate with the understanding that Snell received a sentence of forty-five years, with thirty years to serve and fifteen years suspended, with probation. Accordingly, count 2's sentence, fifteen years suspended, with probation, is consecutive to counts 1 and 3's thirty years of incarceration. We also recognize the parties' understanding that count 4's ten-year sentence includes a five-year period of incarcera-tion, which is concurrent with count 1 and that count 4's five-year suspended sentence is concurrent with count 2 and therefore, begins after Snell's release from prison.

3. Although there is no such indication on the docket, Snell's motion for a reduced sentence was date stamped by the Superior Court clerk's office on May 26, 2006. Based on this date, the submission was filed within 120 days of the Supreme Court's affirmance of the judgment as required by Rule 35(a) of the Superior Court Rules of Criminal Procedure. Accordingly, we consider his motion timely.

4. Rule 35(a) provides in relevant part that "[t]he court may correct an illegal sentence at any time. The court may correct a sen-

supporting the motion argued that the consecutive fifteen-year sentences were grossly disproportionate to applicable sentencing guidelines and that the two sentences related to Eisom were illegal because they violated double-jeopardy provisions.[5] He further pled for leniency. The state objected and also moved for an increased sentence based on Rule 35(b).[6] The state argued that defendant's disciplinary record in prison demonstrated "his inability to conform to the rules of society and severely diminishe[d] his potential for rehabilitation."

Thereafter, Snell, now represented by new counsel, filed a supplemental memorandum supporting his motion. In that memorandum, Snell argued that because his sentences exceeded the Superior Court sentencing benchmarks and were consecutive, rather than concurrent, they could be considered "severe." He contended that such severe sentences were not justified by "extraordinary aggravating circumstances" primarily because the trial justice incorrectly assessed that "both victims 'suffered life threatening injuries.'" According to Snell, the testimonial and medical-record evidence proved that Eisom's and Edmonds's injuries actually were much less serious than the trial justice declared and that, therefore, his justifications for the escalated sentences were dubious.

Both motions were heard and denied on October 1, 2007. In his ruling, the trial justice stated that he "remember[ed] the trial of this case vividly" and then reiterated his reasons for levying benchmark-exceeding, consecutive sentences on Snell. He recalled how "Snell took [Eisom] by surprise" and how both Eisom and Edmonds "receive[d] a vicious beating." The trial justice maintained that "any time anyone stabs another person in the chest or in the neck, it would certainly be life-threatening" and dismissed Snell's contentions otherwise as "semantics." He explained that "both individuals sustained very serious injuries and Mr. Edmonds [in particular] was still suffering at the time of the trial." Beyond the "life-threatening-injury" factor, the trial justice went on to give several additional justifications for the admittedly "heavy sentence": namely that Snell was a recidivist domestic assaulter with a need to control Eisom's behavior and also that Snell refused to take responsibility or express any remorse for beating and slashing his child's mother and her brother. As for his rationale behind the consecutive, rather than concurrent sentences, the trial justice articulated that the separate assaults on Eisom and Edmonds, which were "not part and parcel of the same transaction," merited separate and distinct time to serve. "So for all those reasons," the trial justice saw "no reason to exercise leniency" and found that "the

tence imposed in an illegal manner and it may reduce any sentence when a motion is filed within one hundred and twenty (120) days after the sentence is imposed, or within one hundred and twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment * * *."

5. The double-jeopardy argument Snell made in his initial motion to reduce his sentence is of no effect to this appeal because Snell abandoned the issue at the trial court stage and its merits were not decided by that court. Fur-

thermore, Snell does not raise double jeopardy as a claim of error in this Court. *See* Supreme Court Rules of Appellate Procedure Article I, Rule 16(a) ("Errors not claimed, questions not raised and points not made ordinarily will be treated as waived and not be considered by th[is] Court.").

6. Rule 35(b) provides in relevant part: "*Increase in sentence.* Within twenty (20) days after the filing of a motion to reduce a sentence, the attorney general may file a motion for an increase in said sentence."

sentence that was meted out or imposed back on March 22nd, 2002 was the correct sentence."

The trial justice likewise denied the state's motion to increase Snell's sentence. Although noting that defendant's prison disciplinary record had improved in recent years, the trial justice assessed that Snell's behavior overall had not been good. Nonetheless, he did not see "a reason to increase the sentence."

An order denying Snell's motion for a reduced sentence was entered on October 15, 2007.[7] Snell timely filed an appeal on the same day.

## II

### Standard of Review

We long have held that "[a] motion to reduce sentence under Rule 35 is 'essentially a plea for leniency.'" *State v. Ruffner*, 5 A.3d 864, 867 (R.I.2010) (quoting *State v. Mendoza*, 958 A.2d 1159, 1161 (R.I.2008)). "The motion is addressed to the sound discretion of the trial justice, who may grant it if he or she decides 'on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any reason, unduly severe.'" *Id.* (quoting *Mendoza*, 958 A.2d at 1161). "This Court has maintained 'a strong policy against interfering with a trial justice's discretion in sentencing matters,' and, therefore, we only will interfere with that discretion 'in rare instances when the trial justice has imposed a sentence that is without justification and is grossly disparate from other sentences generally imposed for similar offenses.'" *Id.* (quoting *State v. Coleman*, 984 A.2d 650, 654 (R.I. 2009)). Accordingly, "our review of a motion justice's ruling on a motion to correct

pursuant to Rule 35 is limited." *Ruffner*, 5 A.3d at 867 (quoting *Curtis v. State*, 996 A.2d 601, 603–04 (R.I.2010)). "It is the defendant's burden to show that the sentence imposed violates this standard." *Coleman*, 984 A.2d at 654 (quoting *State v. Ortega*, 755 A.2d 841, 841 (R.I.2000) (mem.)).

## III

### Analysis

On appeal, Snell essentially presents the same arguments that he proffered in the supplemental memorandum to support his motion to reduce his sentence. He acknowledges the strong policy against interfering with the trial justice's sentencing discretion, but contends that this is one of those "rare instances" where we should intervene. Based on his assertion that Eisom and Edmonds did not "suffer[ ] life threatening injuries," he maintains that the length and consecutive nature of the sentences were not justified. Snell urges this Court "to reconsider the evidence on this issue." In turn, the state argues that Snell's motion to reduce was properly denied by the trial justice. The state presents recent Rhode Island Supreme Court precedent to avow that "consecutive sentences are not inherently suspect" and that given the "very serious offenses [for] which Mr. Snell was convicted," his sentence was not "without justification" thereby requiring a reduction.

### A

### Length of the Sentences

At the outset, we note that Snell's two fifteen-year prison sentences were imposed for two separate felony as-

---

**7.** No written order declaring the denial of the state's motion to increase Snell's sentence was entered; however, the docket reflects that this motion was denied on October 1, 2007.

saults. He received fifteen years for assaulting Eisom with a knife (count 1) and another fifteen years for assaulting Edmonds with a shod foot (count 3). Based on § 11–5–2(a), the statutory penalty for felony assault is "imprisonment for not more than twenty (20) years." Accordingly, a fifteen-year sentence for each of these counts is not statutorily infirm. However, we acknowledge that, based on the Superior Court Sentencing Benchmarks, fifteen years is a departure from the norm. Benchmark 9 recommends a sentence of twelve to eighteen months if a knife or firearm was utilized and slight or no injury results, while benchmark 10 suggests four to five years in the case of serious injury. We note however, that the benchmarks are not mandatory and this Court has stated that they are only "a guide to proportionality." *Coleman*, 984 A.2d at 655 (quoting *State v. Bettencourt*, 766 A.2d 391, 394 (R.I.2001)). A trial justice is "bound only by the statutory limits." *Id.*

■ To justify departure from the benchmarks and to "formulat[e] a fair sentence, a trial justice 'considers various factors including the severity of the crime, the defendant's personal, educational, and employment background, the potential for rehabilitation, social deterrence, and the appropriateness of the punishment.'" *Coleman*, 984 A.2d at 655 (quoting *Bettencourt*, 766 A.2d at 394). In addition, the Superior Court sentencing benchmarks explicitly state that "[s]ubstantial and compelling circumstances for departure from the benchmarks may include": "harm to the victim," "defendant's criminal record," "circumstances of the commission of the crime," "defendant's attitude and feeling about the crime (i.e., remorse, repentance,

hostility)," and "other substantial grounds which tend to mitigate or aggravate the offender's culpability." Given the vast discretion we afford to the trial justice's sentencing judgment, we cannot reasonably conclude that the sentences here were "'without justification and * * * grossly disparate from other sentences.'" *Ruffner*, 5 A.3d at 867.

The trial justice articulated numerous reasons for giving Snell a stiff punishment including the viciousness of the crimes, Snell's criminal record riddled with prior assaultive conduct and domestic violence, Snell's refusal to take responsibility or show remorse for his actions, Snell's efforts to control the behavior of his child's mother, and the fact that the commission of the crime was by ambush. Despite Snell's arguments that the trial justice based his sentencing on the "life-threatening" nature of the injuries, we clearly can ascertain from the record that the nature of the injuries was but one of several reasons why Snell received a "heavy" term of years to serve. As such, we decline defendant's invitation to parse the testimonial or medical-record evidence to nit-pick whether Snell's grievous crimes truly were life threatening from a medical standpoint.[8] The trial justice was well within his discretion to give and then confirm the instant punishment for Snell, based on all the other justifiably aggravating circumstances.

## B

### Consecutive Sentences

Likewise, we are not persuaded by Snell's argument that the trial justice's consecutive sentences were unwarranted.

---

**8.** We emphasize that the wounds to both Eisom and Edmonds were serious enough to require emergency medical attention and sutures. Edmonds, in particular, "suffered a fractured cheekbone and eye socket. He subsequently underwent surgery on his eye socket as a result of the incident." *Snell*, 892 A.2d at 113.

To support his contention, Snell makes much of our opinion in *State v. Ballard,* 699 A.2d 14, 18 (R.I.1997), in which we stated that if "a criminal defendant commits multiple criminal endeavors concurrently, thereby giving rise to multiple convictions, that defendant ought to be committed to serve sentences for those convictions concurrently, absent the presence of extraordinary aggravating circumstances * * *." However, this Court has since all but overruled *Ballard,* recently holding that "we have declined to treat * * * *Ballard* as a bright-line rule with respect to consecutive sentences." *Coleman,* 984 A.2d at 656. Further, we "[r]ecogniz[ed] that * * * *Ballard* was an aberration, [that] we now hold * * * is of little or no precedential value." *Id.*

For example, in *Coleman,* 984 A.2d at 656, we held that denying a motion to reduce consecutive sentences to concurrent was not in error where the trial justice found that the defendant did not commit a "run-of-the-mill breaking and entering." Noting that the crime was "one of violence, * * * a premeditated crime, a cold-hearted crime, a crime for profit, with no regard, whatsoever, to the rights of [his victims], * * * without regard to the law" and recalling that the defendant "lied on the stand during his trial, * * * lacked any remorse for his actions, and * * * refused to take personal responsibility," this Court held that "it was not an abuse of [the trial justice's] discretion to order [the defendant] to serve consecutive sentences." *Id.* at 657. So too here, we find that the trial justice's "exhaustive explanation of his reasoning in sentencing" Snell more than justifies the consecutive terms of incarceration. *See id.* at 657. Based on the trial record before us and especially the fact that there were two, non-simultaneous assaults on two different victims, it was not an abuse of discretion for the trial justice to impose the consecutive sentences

and thereafter deny Snell's Rule 35 motion.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Superior Court and direct the papers in this case to that court.