**Supreme Court**

No. 2011-339-C.A.

(W1/06-69A)

State                           :

v.                           :

Jose Rivera.                           :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|        |   |
|--------|---|
| State  | : |
| v.     | : |
| Jose Rivera. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on January 23, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  The defendant, Jose Rivera, appeals from the denial of a motion to reduce a sentence in accordance with Rule 35 of the Superior Court Rules of Criminal Procedure; he argues that the sentence he received upon conviction on multiple counts of first- and second-degree sexual assault and one count of simple assault against three developmentally disabled women is without justification and disproportionate to sentences imposed for similar crimes.  After carefully considering the written submissions and arguments of counsel, we conclude that cause has not been shown and that the appeal may be decided at this time.  We affirm the judgment.

### Facts and Travel

This case involves numerous instances of sexual assault upon two developmentally disabled women and one instance of physical assault upon another developmentally disabled woman perpetrated by defendant, who was a bus driver serving individuals with disabilities.  A

detailed recitation of the facts is set forth in our decision affirming defendant's conviction. State v. Rivera, 987 A.2d 887, 892-95 (R.I. 2010). We therefore recount only those facts necessary to our disposition of this appeal.

At the time of these offenses, defendant was employed as a bus driver in the RIde division of the Rhode Island Public Transit Authority. In that capacity, he drove five bus routes to the Adeline LaPlante Memorial Center (LaPlante Center), an organization providing services to individuals with developmental disabilities. The defendant's duties were to pick up the assigned passengers, transport them to the LaPlante Center, and assist them in boarding and disembarking from the bus.

In June and July of 2005, defendant sexually assaulted two of his female passengers and physically assaulted a third. The first victim, a thirty-seven-year-old LaPlante Center employee with a severe developmental disability, was assaulted on two occasions. Each time, defendant touched the victim's breasts and placed his penis on her vagina, all without her consent. The defendant also engaged in unconsented sexual contact with the breasts and vagina of his second victim, a twenty-two-year-old developmentally disabled woman. Finally, defendant touched the upper body of a third victim, a thirty-nine-year-old developmentally disabled woman, without her consent.

The defendant was indicted on two counts of first-degree sexual assault and two counts of second-degree sexual assault of the first victim, two counts of second-degree sexual assault of the second victim, and one count of second-degree sexual assault of the third victim. The jury returned a guilty verdict on all counts pertaining to the first two victims, and it found defendant guilty of the lesser-included offense of simple assault of the third victim. The trial justice sentenced defendant to life imprisonment on the first-degree sexual assault counts and concurrent

terms of fifteen years to serve on the second-degree sexual assault counts involving the first victim. With respect to the second-degree sexual assault crimes against the second victim, the trial justice imposed two concurrent sentences of fifteen years, to run consecutively to the sentences imposed for the counts involving the first victim. Finally, the trial justice sentenced defendant to one year for the simple-assault conviction, consecutive to all other sentences. The cumulative result of defendant's sentences was life imprisonment, followed by a consecutive term of sixteen years to serve.

This Court affirmed defendant's conviction on February 12, 2010. On May 5, 2010, defendant timely filed a motion to reduce his sentence. At a hearing before the same trial justice on June 27, 2011, defendant argued that the sentence was disproportionate to the putative relevant sentencing benchmark—benchmark 35D of the Superior Court Sentencing Benchmarks—for first-degree child molestation of a mentally or physically disabled child, which recommends a sentence between twenty and thirty years to serve.[1] The defendant also cited State v. Gardiner, 895 A.2d 703, 704-06 (R.I. 2006), a case involving the first-degree sexual assault of a developmentally disabled woman at a group home at the hands of a community-living aide where the defendant was sentenced to twenty years with eight to serve, and argued that the sentence imposed here was disproportionate to the sentences imposed in similar cases. Finally, in an attempt to show that defendant's sentence was excessive when compared to the sentences typically meted out by the trial justice, defendant introduced an exhibit containing a list of first-degree and second-degree child molestation and first-degree sexual assault cases,

---

[1] Defense counsel selected the sentencing benchmark for first-degree child molestation because the first victim's developmental disability rendered her the functional age of a five- or six-year-old child.

along with brief summaries of those cases, over which the trial justice had presided. Defense counsel recommended that defendant's sentence be reduced to twenty to thirty years to serve.

During the hearing, the trial justice inquired whether defendant wished to address the court. After being informed that defendant declined to do so, the trial justice noted that one of the factors impacting the sentence defendant received was his failure to express remorse or take responsibility for his actions, and the trial justice asked whether there had been any change in these circumstances. Defense counsel related that there had been a discussion between defendant and officials at the Adult Correctional Institutions concerning enrollment in sex-offender counseling but that, because defendant was housed in Maximum Security, he was prevented from participating in that treatment program.

For its part, the state highlighted the severity of the offenses, juxtaposed with the position of trust that defendant held with respect to his duty towards these individuals. The state argued that defendant's crimes were "unprecedented" and stressed that defendant never had accepted responsibility for his actions. Accordingly, the state argued against a sentence reduction.

The trial justice denied defendant's motion. The trial justice explained:

> "[T]he fact that each of the victims in this case was developmentally disabled was the driving force behind the sentence imposed. Although the chronological age of each of the victims was that of an adult, the functional age was that of a child[,] and children as well as developmentally-disabled adults are similar in that they are both vulnerable * * *."

The trial justice further explained that he had "never been presented with a similar set of facts, either as to what happened or as to the type of victims involved" and that "the nature of the crimes was horrific," "the victims, being all developmentally-disabled adults, * * * were obviously [the] most vulnerable," and defendant, "who took advantage of his position of authority and trust as their, not only [their] driver, but really responsible adult while they were on

that bus, raped [the first victim] and sexually assaulted [the second victim] and assaulted [the third victim]." Finally, the trial justice remarked that defendant still had not accepted responsibility for his actions, nor had he expressed remorse. For these reasons, the trial justice determined that the requested relief was unwarranted. The defendant appealed.

## Standard of Review

A motion to reduce sentence under Rule 35(a) "is 'essentially a plea for leniency' * * * addressed to the sound discretion of the trial justice, who may grant it if he or she decides 'on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any reason, unduly severe.'" State v. Chase, 9 A.3d 1248, 1253 (R.I. 2010) (quoting State v. Mendoza, 958 A.2d 1159, 1161 (R.I. 2008)); see also State v. Snell, 11 A.3d 97, 101 (R.I. 2011); State v. Byrnes, 456 A.2d 742, 744 (R.I. 1983). In line with our "strong policy against interfering with a trial justice's discretion in sentencing matters," our review of a trial justice's ruling on a Rule 35 motion is extremely limited; we will interfere with the trial justice's decision only in those "rare instances when the trial justice has imposed a sentence that is without justification and is grossly disparate from other sentences generally imposed for similar offenses." Snell, 11 A.3d at 101 (quoting State v. Ruffner, 5 A.3d 864, 867 (R.I. 2010)); see also State v. Dyer, 14 A.3d 227, 227 (R.I. 2011) (mem.). The defendant bears the burden to convince us that his or her sentence violates this standard. State v. Diefenderfer, 32 A.3d 931, 935 (R.I. 2011); Snell, 11 A.3d at 101.

## Analysis

In an effort to surmount the high hurdle that is a challenge to a denial of a motion to reduce a sentence, defendant assigns four errors to the trial justice's decision. First, defendant contends that his sentence is grossly disparate from the sentence called for by the relevant

sentencing benchmark—benchmark 35D—which recommends a sentence between twenty and thirty years to serve. Second, defendant argues that his sentence is grossly disparate from the sentences imposed in similar cases generally and in similar cases over which the trial justice presided in particular. Third, defendant claims that the trial justice failed to give full consideration to the evidence defendant put forth to mitigate the severity of his sentence, including his long stint as a law-abiding citizen and the letters in support of defendant, which portrayed him as a "thoughtful, caring, hard-working gentleman who has always positively impacted the lives of others." Finally, defendant asserts that the trial justice unfairly construed his failure to participate in sex-offender counseling—which, defendant maintains, was made impossible by the length of his sentence—as evidence of a failure to accept responsibility for his crimes. We address each contention in turn.

With respect to defendant's benchmarks argument, although both parties agree that benchmark 35D, the benchmark for first-degree child molestation of mentally or physically disabled children, bears some relevance to this case because the victims had severe developmental disabilities that rendered them the functional age of small children, there is no consensus on whether other sentencing benchmarks also apply. The state argues that benchmark 31C, which recommends a sentence of more than twenty years to serve for one or more convictions of first-degree sexual assault involving aggravating circumstances, and benchmark 35E, which suggests a twenty-five-years-to-life sentence for conviction of first-degree child molestation where there are multiple counts of conviction, physical injury, or aggravating

circumstances, are instructive. The defendant demurs, arguing that "aggravating circumstances," as that term is defined in the benchmarks, are not present in this case.[2]

We need not enter this fray. We repeatedly have explained that "the [sentencing] benchmarks are not mandatory and * * * are only 'a guide to proportionality.' * * * A trial justice is 'bound only by the statutory limits.'" Snell, 11 A.3d at 102 (quoting State v. Coleman, 984 A.2d 650, 655 (R.I. 2009)); see also State v. Morris, 863 A.2d 1284, 1289 (R.I. 2004). The sentence imposed on each count of conviction in this case was within the statutory range. See G.L. 1956 § 11-37-3 ("Every person who shall commit sexual assault in the first degree shall be imprisoned for a period not less than ten (10) years and may be imprisoned for life."); § 11-37-5 ("Every person who shall commit sexual assault in the second degree shall be imprisoned for not less than three (3) years and not more than fifteen (15) years."); G.L. 1956 § 11-5-3 ("[E]very person who shall make an assault or battery or both shall be imprisoned not exceeding one year or fined not exceeding one thousand dollars ($1,000), or both.").

Moreover, the benchmarks themselves recognize that "substantial and compelling circumstances" can justify departure from the recommended sentence. The benchmarks identify several factors that could, in any given case, militate in favor of a departure; these enumerated factors include: "harm to the victim"; "circumstances of the commission of the crime"; "whether the crime was an isolated offense or part of an organized enterprise"; "defendant's attitude and feeling about the crime (i.e., remorse, repentance, hostility)"; and "other substantial grounds

---

[2] Benchmark 31C of the Superior Court Sentencing Benchmarks provides the following definition of "aggravating circumstances": "Aggravating circumstances include, but are not limited to, excessive force or violence; the act having been committed in conjunction with other crimes; moderate to severe injury, mental or physical; or perpetration of acts which are particularly degrading or humiliating to the victim."

which tend to mitigate or aggravate the offender's culpability." See Snell, 11 A.3d at 102 (listing some of these factors, along with others).

In this case, the trial justice, while noting that he had reviewed the benchmarks, identified several factors that, in his mind, justified a lengthy sentence. He explained that "the fact that each of the victims in this case was developmentally disabled was the driving force behind the sentence imposed." The trial justice found the harm to the victims to be extensive and continuing; he noted that he received letters from the mothers of the victims and one from defendant's first victim that indicated that "they continue to live in fear and have to deal with the rapes and sexual assaults that occurred every day." The trial justice further noted that defendant had been entrusted with the care of each of the victims and that defendant had broken this trust. He found that "the nature of the crimes was horrific" and that the victims "were obviously [the] most vulnerable." He explained that this case did not involve a single, isolated incident; defendant's crimes "were separate, distinct and discrete offenses that occurred at separate times and separate places under different conditions or circumstances." Finally, the trial justice was struck by defendant's persistent failure to accept responsibility or express remorse: "in this case[,] the defendant has not and continues not to accept responsibility, * * * nor has the defendant expressed one iota of remorse * * *." In sum, the trial justice believed that the sentence imposed "reflect[ed] the nature of the crimes, [and] the impact on the victims."

Thus, even if we were to assume that benchmark 35D was the only applicable benchmark, the trial justice identified a plethora of factors justifying a departure from that benchmark. We cannot say that the sentence imposed by the trial justice was without justification and was also grossly disparate from other sentences as to amount to an abuse of discretion.

We similarly are satisfied that defendant's argument that his sentence is grossly disparate from sentences imposed in similar cases is unpersuasive. First, with respect to the sentences imposed by the trial justice in similar cases, the trial justice found that this case was <u>sui generis</u>, explaining that "in [his] tenure as a judge, * * * [he had] never been presented with a similar set of facts, either as to what happened or as to the type of victims involved." After a careful review of the cases relied upon by defendant for this comparison, we have no reason to doubt the trial justice's assessment.

The defendant also alleges that his sentence is grossly disparate from sentences generally imposed in similar cases; in doing so, defendant principally relies on two opinions from this Court—<u>State v. Barkmeyer</u>, 32 A.3d 950, 951 (R.I. 2011), and <u>Gardiner</u>, 895 A.2d at 704-06. In <u>Gardiner</u>, 895 A.2d at 705-06, the defendant, a community-living aide at a group home, anally raped a developmentally disabled adult woman with an IQ of approximately fifty-five. Although our opinion affirming the defendant's conviction is silent as to the sentence imposed, defendant maintains, and the state does not contest, that the defendant in <u>Gardiner</u> received a twenty-year sentence, with eight years to serve, the balance suspended, with probation. The underlying facts in <u>Barkmeyer</u> are no less disturbing; in that case, the defendant bound the hands and feet of his eight-year-old stepdaughter and digitally penetrated her vagina, causing injuries so severe that the victim required surgery. <u>State v. Barkmeyer</u>, 949 A.2d 984, 989-91 (R.I. 2008). The defendant received a fifty-year sentence, with thirty years to serve, the balance suspended, with probation. <u>Barkmeyer</u>, 32 A.3d at 951. In this case, defendant argues that his sentence is disproportionate to the sentences meted out in <u>Barkmeyer</u> and <u>Gardiner</u> given the similarities of the crimes.

However, this case involves not a single aberration, but a series of sexual assaults upon multiple victims, all of whom were developmentally disabled. These circumstances were not present in either Barkmeyer or Gardiner, each of which involved the commission of a single instance of sexual assault, albeit very serious, upon one victim. The multiple-offense and multiple-victim aspects of this case, coupled with the other circumstances relied upon by the trial justice—including the nature of the offenses, the impact on the highly vulnerable developmentally disabled victims, and defendant's steadfast refusal to accept responsibility or express remorse—convinces us that the sentence imposed should not be disturbed. Cf. Barkmeyer, 32 A.3d at 953 ("[T]he trial justice properly focused on the severity of [the] defendant's crime, which he referred to as a 'truly * * * horrific, unforgivable criminal act' and 'as vile an act as [he could] envision,' ultimately warranting the 'harsh' sentence imposed. We discern no error in this determination."); State v. Sifuentes, 667 A.2d 791, 792 (R.I. 1995) (affirming the denial of a motion to reduce a sentence of life imprisonment without the possibility of parole for a first-degree murder involving torture and aggravated battery because "it [was] clear that the trial justice was mindful of the barbaric, gruesome nature of the crime and was equally mindful that the defendant had failed to accept responsibility and to express remorse for that crime").

Moreover, although defendant's life sentence is the maximum sentence authorized by § 11-37-3, we note that this case hardly is the first in which a sentence of life imprisonment has been imposed for first-degree sexual assault. See, e.g., State v. Cook, 45 A.3d 1272, 1274-75 (R.I. 2012); State v. Vieira, 913 A.2d 1015, 1015-16 (R.I. 2007); State v. Thomas, 723 A.2d 788, 789 (R.I. 1998) (mem.); State v. Kholi, 706 A.2d 1326, 1326 (R.I. 1998) (mem.); State v. McVeigh, 683 A.2d 375, 375, 376 (R.I. 1996) (mem.) (affirming the trial justice's denial of a

motion to reduce a sentence that amounted to "the equivalent of two [consecutive] life sentences," which the trial justice recognized as "possibly the most severe sentence ever imposed for sexual assault"); State v. Toole, 640 A.2d 965, 968 (R.I. 1994); State v. Acquisto, 619 A.2d 428, 428 (R.I. 1993); State v. Shatney, 572 A.2d 872, 874 (R.I. 1990); State v. Ferrara, 571 A.2d 16, 17 (R.I. 1990); State v. Griffin, 567 A.2d 796, 798 (R.I. 1989). We therefore reject defendant's argument that his sentence is grossly disparate from sentences imposed in similar cases.

We next turn to defendant's contention that "his good character and otherwise unblemished history for the first fifty-plus years of his life" should have mitigated the severity of his sentence. Although the trial justice acknowledged that he considered the letters submitted on defendant's behalf, it is abundantly clear from his bench decision that he found this mitigation evidence to be outweighed by countervailing circumstances, including the nature of the offenses, the fact that the victims were developmentally disabled, the impact of the crimes on the victims, and defendant's failure to accept responsibility or express remorse. Employing our deferential standard of review, we decline to hold that the trial justice struck an inappropriate balance.

Finally, defendant contends that the trial justice unfairly considered his inability to engage in sex-offender counseling, a consequence of the length of his sentence, as further evidence of a failure to accept responsibility. After carefully reviewing the trial justice's bench decision, however, we do not agree that he equated nonparticipation in sex-offender counseling with failure to accept responsibility. At most, the trial justice rejected defendant's argument that, because he had sought sex-offender counseling, albeit unsuccessfully, he has evidenced a desire to accept responsibility; the trial justice explained that defendant's efforts in that regard "carrie[d] no weight." The conclusion that defendant's post-sentencing rehabilitative efforts

would not carry any weight in ruling on the motion to reduce is supported by our precedent. See Barkmeyer, 32 A.3d at 953 ("This Court repeatedly has held that it is within a trial justice's discretion to reserve consideration of a defendant's 'good behavior and rehabilitative efforts while in prison to the parole board.' * * * Consequently, a trial justice is not required to consider or lend 'credit' to a defendant's prison behavior when making a Rule 35 determination." quoting Ruffner, 5 A.3d at 866, 868). We discern no unfairness in the trial justice's refusal to credit defendant's efforts to enroll in sex-offender counseling.

Although we recognize that the defendant's sentence undeniably is lengthy, the offenses of which the defendant stands convicted irrefutably were horrific. The trial justice identified several factors supporting the statutorily-authorized life sentence for first-degree sexual assault. The defendant has not convinced us "that this matter is among those rarest of cases that would justify altering our strong policy against interference with the ruling of the trial justice." Barkmeyer, 32 A.3d at 955 (quoting Dyer, 14 A.3d at 228). Accordingly, we conclude that the trial justice did not stray from the confines of his discretion in imposing this sentence and denying the defendant's motion to reduce.

## Conclusion

For the reasons articulated above, we affirm the judgment below. The papers may be remanded to the Superior Court.



**TITLE OF CASE:**          State v. Jose Rivera.

**CASE NO:**          No. 2011-339-C.A.
(W1/06-69A)

**COURT:**          Supreme Court

**DATE OPINION FILED:**          May 2, 2013

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**          Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

For State:  Christopher C. Bush
Department of Attorney General

For Defendant:  Catherine Gibran
Office of the Public Defender