June 11, 2025

|  |  |
|---|---|
| State | : |
| v. | : |
| Luis Roman. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State             :

v.             :

Luis Roman.         :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** The matter before the Court is an appeal filed by the defendant, Luis Roman (defendant), of a Superior Court order denying the defendant's motion to reduce his sentence under Rule 35 of the Superior Court Rules of Criminal Procedure. The defendant had been sentenced to a total of seventy years with thirty years to serve at the Adult Correctional Institutions, with ten years being nonparolable. The defendant waived prebriefing, and the matter was placed on the full argument calendar. For the reasons set forth herein, we affirm the order of the Superior Court.

**Facts and Travel**

In the early morning hours of August 11, 2021, Officer Robert Savage (Officer Savage) of the Providence Police Department encountered gunfire immediately upon responding to a 911 call at a home on Canton Street in Providence, Rhode

Island. A heavily intoxicated defendant fired numerous shots from an AR-15 ghost[1] rifle at Officer Savage's police cruiser, some striking the vehicle. The 911 call was placed by defendant's girlfriend, Stephanie Perez (Perez), whom defendant had physically assaulted prior to the phone call. After fleeing, defendant was later found hiding at his mother's house, where he was arrested. On January 10, 2022, defendant was indicted on ten charges related to the events of August 11. The charges included assault with intent to murder, assault with a dangerous weapon, discharge of a firearm while in commission of a crime of violence, two counts of possession of a firearm by a person previously convicted of a crime of violence, unlawful possession of a stolen firearm, possession of a ghost gun, and three charges[2] relating to the assault upon Perez. The state later notified defendant of the state's intent to treat defendant as a habitual offender.

At around 4:00 o'clock on the morning in question, defendant and Perez began an argument, which quickly escalated to a violent encounter. The defendant strangled Perez to the point where she could not breathe. As defendant disengaged from Perez, she reached for her phone and dialed 911. Perez did not press the send

---

[1] G.L. 1956 § 11-47-2(8) defines a "ghost gun" to be "a firearm, including a frame or receiver, that lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker, or importer under federal law * * *."

[2] The grand jury indicted defendant for assault by strangulation, and two counts of assault with a dangerous weapon.

button on her phone because she feared that defendant would make good on a prior promise that he would rather shoot at police than go back to prison.[3] After this, defendant retrieved his rifle and struck Perez three times with it. During the struggle, the 911 call went through. The defendant then exited the home with the rifle to wait for police.

Officer Savage responded to the call and immediately saw defendant holding the rifle on the front porch of defendant's dwelling. The defendant began firing at Officer Savage's car, causing him to reverse his vehicle. After firing thirteen shots, two of which hit Officer Savage's cruiser, defendant fled back to the home. He was later apprehended at his mother's home. A search of defendant's residence resulted in police recovering an AR-15 rifle, an extended magazine for the firearm, a stolen pistol, and ammunition.

On January 17, 2023, defendant pled guilty to eight of the ten charges filed against him, with the state dismissing the other two counts. As part of his plea, defendant acknowledged that he was a habitual offender and that he had violated his probation in two other cases. At the change-of-plea hearing, the sentencing justice

---

[3] The defendant avers that he does not recall stating an intent to engage in a shootout with police. At oral argument, defendant claimed that this statement could not have formed intent to murder because he considered it to be more indicative of suicide-by-police.

agreed to sentence defendant to a term that could not exceed twenty years of nonparolable time. A presentence report was prepared.

In his presentencing memorandum, defendant detailed his difficult upbringing that led to legal troubles as a young person. The defendant's criminal history included a guilty plea for felony assault and discharging a firearm while committing a crime of violence after he shot two bullets into a neighbor's home. The defendant also pled guilty to a drug-related offense that resulted in gun charges being dismissed. The defendant was on probation from both cases on the date of the incident. He appeared to have his life back on track when he met Perez, but things changed. The defendant was informed that his eldest child was being abused by her grandfather. Unable to cope with this in a healthy way, defendant reverted to drinking alcohol. In an attempt to mitigate his actions, defendant offered the report of a psychiatrist at sentencing, who diagnosed defendant with alcohol use disorder and concluded that defendant was experiencing a blackout on the night in question. In its presentencing memorandum, the state pointed to defendant's extensive violent criminal history, his abuse of alcohol, and his prohibition from possessing firearms.

At sentencing, the Superior Court imposed a sentence of seventy years with thirty years to serve at the ACI. Ten of the thirty total years were to be nonparolable. The sentencing justice recognized that defendant had a difficult life and that he had taken steps to improve himself. However, the sentencing justice stated that

defendant's alcohol abuse on the night of the incident did not excuse his deliberate decision to arm himself when he learned police would be arriving on the scene. The sentencing justice also concluded that defendant must be held accountable for targeting law enforcement. Following that rationale, the sentencing justice imposed the sentence, one that fell below the cap defendant agreed to in the plea agreement.

Two months after sentencing, defendant filed a motion to reduce his sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. The defendant argued that the sentencing justice did not sufficiently consider defendant's diminished capacity and other mitigating factors. The sentencing justice denied defendant's motion, noting defendant's waiver of his right to file a Rule 35 motion due to his guilty plea, and ultimately finding that defendant's sentence was proper considering the aggravating circumstances. The defendant timely filed the instant appeal.

**Standard of Review**

"A motion to reduce a sentence under Rule 35 'is essentially a plea for leniency.'" *State v. Oliveira*, 195 A.3d 1088, 1090 (R.I. 2018) (brackets omitted) (quoting *State v. Rivera*, 64 A.3d 742, 745 (R.I. 2013)). "The motion is addressed to the sound discretion of the trial justice, who may grant it if he or she decides on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any reason, unduly severe." *Id.* (quoting *State v. Mlyniec*, 78 A.3d

769, 771 (R.I. 2013)).  This Court has a "strong policy against interfering with a trial justice's discretion in sentencing matters," and thus "our review of a trial justice's ruling on a Rule 35 motion is extremely limited * * *." *Rivera*, 64 A.3d at 745 (quoting *State v. Snell*, 11 A.3d 97, 101 (R.I. 2011)).  "Accordingly, we will interfere with that discretion only in 'rare instances when the trial justice has imposed a sentence that is without justification and is grossly disparate from other sentences generally imposed for similar offenses.'" *Oliveira*, 195 A.3d at 1090 (quoting *Rivera*, 64 A.3d at 745).  "The defendant has 'the burden of showing that the sentence imposed violated this standard.'" *State v. Mendoza*, 958 A.2d 1159, 1162 (R.I. 2008) (quoting *State v. Furtado*, 774 A.2d 38, 39 (R.I. 2001)).

**Discussion**

The defendant first argues that his plea-agreement waiver of his right to file a motion to reduce should not have been the sole reason to deny defendant's motion.  Next, defendant takes issue with the sentencing justice's consideration of a statement concerning defendant's purported intent to engage in a shootout with police over a potential return to prison.  He asserts that he has no recollection of stating these words yet submits that the sentencing justice "put this false fact on the record at" sentencing.  Finally, defendant contends that the sentencing justice's use of defendant's alleged statement amounted to a violation of due process.

In its brief, the state argues that defendant's guilty plea constitutes a waiver of his right to file the motion to reduce the sentence. Further, the state submits that the sentencing justice's decision was correct because defendant's motion lacked merit. The state advances that it merely announced its intention to prove defendant's statement regarding a shootout with the police at trial and that the sentencing justice did not impose the sentence as a result of this comment. Instead, the state points to an abundance of evidence suggesting that defendant had the requisite intent to support the sentence on the attempted-murder charge.

We must first note that defendant did not provide the Court with a transcript of the hearing at which he entered his guilty plea. It was during this hearing that the statement he challenges was purportedly made by the state, and this statement, he alleges, was later relied on by the sentencing justice. Article I, Rule 11(a) of the Supreme Court Rules of Appellate Procedure provides, in part, "[p]romptly after filing the notice of appeal the appellant shall comply with the provisions of Rule 10(b) or (c) and shall take any other action necessary to enable the clerk to assemble and transmit the record." *DaSilva v. Smith*, 325 A.3d 898, 898-99 (R.I. 2024) (mem.) (quoting *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 532 (R.I. 2002)). "In the absence of a transcript, this Court cannot determine how the trial justice came to a decision or, in turn, whether the trial justice erred in coming to that decision." *Id.* at 899.

Without the transcript, we are unable to fully determine what took place at the change-of-plea hearing. Notwithstanding this failure, we have been clear that a defendant bears a heavy burden in overcoming the determinations made on a motion to reduce a sentence. *Mendoza*, 958 A.2d at 1162 ("This Court is '[loath] to interfere with a trial justice's discretionary resolution of a Rule 35 motion except in the rarest of cases when the sentence is without justification.'") (quoting *State v. Smith*, 676 A.2d 765, 767 (R.I. 1996)).

We are hard-pressed to conclude that the sentence was "without justification and * * * grossly disparate from other sentences generally imposed for similar offenses." *See Rivera*, 64 A.3d at 745 (quoting *Snell*, 11 A.3d at 101). The defendant claims that his due-process rights were violated, citing the sentencing justice's purported consideration of defendant's preference for a shootout with police rather than returning to prison. The defendant repeatedly notes in his brief that he does not recall uttering these words, yet simultaneously labels any assertion that he made the statement as "false." However, we note that, in addition to the statement purportedly being repeated by the state at the change-of-plea hearing, the statement also was in a sentencing evaluation completed by defendant's psychiatrist.

Whether or not he made the statement is of little moment; the sentence was within the sentencing justice's discretion, regardless of his purported remark. The sentencing justice considered the mitigating factors that defendant presented to the

Superior Court, including that defendant lived a "disjointed life" and that defendant was abusing alcohol to cope with learning that his daughter was abused by her grandfather. Notwithstanding these circumstances, defendant committed an unprovoked attack on a police officer who was responding to an emergency call. The defendant has a prior criminal history, including his involvement in another shooting in which he nearly killed a neighbor.

Based upon the record before us, we are satisfied that the sentencing justice fashioned a justified sentence based on the facts of this case. The sentencing justice clearly took into account all of the evidence before him; indeed, he even sentenced defendant to a term below the cap called for in the plea agreement. The record reflects that defendant has a violent criminal history that culminated in a physical altercation with his girlfriend and the attempted murder of a police officer. The sentencing justice considered defendant's drunken and fragile emotional state on the day of the shooting and his troubled upbringing as part of the sentence and imposed a penalty he deemed appropriate for this conduct.[4] Therefore, we decline to disturb the sentencing justice's decision.

---

[4] To the extent that defendant would like us to engage in a comparative sentence analysis, we decline to do so. *See State v. Chase*, 9 A.3d 1248, 1255 (R.I. 2010) ("This Court has recognized that a list of sentence comparisons is not adequate to meet the heavy burden that a defendant must satisfy on a motion to reduce.") (quoting *State v. Morris*, 863 A.2d 1284, 1288-89 (R.I. 2004)).

While we see no error in the Rule 35 determination, the Court has concerns regarding the waiver contained in the plea form. When asked about the inclusion of the Rule 35 waiver on the plea form at oral argument, the state noted that Rule 58 of the Superior Court Rules of Criminal Procedure permits the use of forms found on the Rhode Island Judiciary's website. This Court does not view the fact that the defendant placed a checkmark next to that particular provision on the plea form as dispositive of the issue presented in this case.

## Conclusion

For the reasons outlined herein, we affirm the order of the Superior Court. The papers may be returned to the Superior Court.

# STATE OF RHODE ISLAND

# SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



# OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Luis Roman. |
| **Case Number** | No. 2024-78-C.A. (P1/22-180AG) |
| **Date Opinion Filed** | June 11, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Brendan Patrick Sullivan<br>Department of Attorney General |
| | For Defendant:<br><br>Luis Roman, *pro se* |